### BERNARDI BROS., INC., Plaintiff-Appellee,

v.

### GREAT LAKES DISTRIBUTING INC., Defendant-Appellant.

Nos. 82–2039, 82–2871.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 11, 1983.
Decided July 28, 1983.

Paul V. Esposito, Lewis, Overbeck & Furman, Chicago, Ill., for defendant-appellant.

Peter Flynn, Cherry & Flynn, Chicago, Ill., for plaintiff-appellee.

Before CUMMINGS, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

CUDAHY, Circuit Judge.

This is an appeal from an order granting summary judgment for plaintiff Bernardi Brothers Incorporated ("Bernardi") and finding defendant Great Lakes Distributing Incorporated ("Great Lakes") liable on a contract of guaranty. A cross-motion by Great Lakes for summary judgment was denied. Jurisdiction is based on diversity of citizenship. 28 U.S.C. § 1332(a)(1).[1]

I

Bernardi manufactures commercial car wash equipment, and Great Lakes distributes Bernardi's products. In the fall of 1978, Andres Estevez ("Estevez"), with the assistance of Great Lakes, submitted a proposal to plaintiff for the purchase of car wash equipment. Estevez planned to open and operate a car wash business in Chicago, Illinois with the equipment to be purchased.

The anticipated transaction involved installment payments totalling approximately $100,000 over a five year period. Bernardi intended to "factor," or assign, this account receivable to CIT Corporation ("CIT"). Because of the length of the term of the installment note, both Bernardi and CIT wanted Great Lakes to guarantee the note. On February 15, 1979, defendant executed a written guaranty covering the extension of credit to the buyer, denominated "Andre Estevez Car Wash," an unincorporated sole proprietorship.

The equipment sales contract, in the form of a security agreement, was not executed until March 26, 1979. In the interim between the Great Lakes' guaranty and the execution of the security agreement, Estevez incorporated his business and named it "Finest Car Wash, Inc." ("Finest"). The security agreement listed "Finest Car Wash, Inc." as the debtor, and was signed by Estevez in his capacity as president of Finest. Affidavits filed by the parties in support of their respective motions for summary judgment indicate that Great Lakes was fully aware of these events as they transpired. The affidavit of Robert Jabaay, president of Great Lakes at the time of these events, states: "That at the time the guaranty agreement was signed, [he] was not aware that the sale was being made to anyone other than Andres Estevez." The affidavit of John Witmer, the officer of Bernardi responsible for the transaction in question, does not contradict this, but simply states that: "Both Great Lakes and Mr. Jabaay were well aware of this name selection [the incorporation and name change to Finest], at and after the execution of the Bernardi/Finest Car Wash, Inc. sale contract." These statements are not in conflict. Mr. Jabaay could not have known of the incorporation and name

---

1. Bernardi is a Pennsylvania corporation and Great Lakes is an Illinois corporation. It is apparently uncontested that Illinois law governs this dispute.

change at the time his guaranty was given, since these developments had not yet occurred. And Mr. Witmer's statement does not cast doubt on Mr. Jabaay's lack of knowledge *at the time the guaranty was given.*

At the same time the equipment sales contract was executed, a second guaranty was also executed. This document guaranteed an extension of credit to "Finest Car Wash, Inc." of Chicago, Illinois. This printed-form guaranty had the following notation at the bottom: "Note: Insert exact name of company in top blank line, with city and state. Individual guarantors must sign guaranty without titles. Sign simply 'John Smith,' not 'John Smith, President.'" A line on the form was designated "For Individual Guarantors" by a notation printed next to a bracket which indicated the designated line. On this line, the name "Andres Estevez" was typed, together with Estevez' home address. Immediately below that line was another line designated "For Corporate Guarantor." This line had the further designation "President" printed immediately beneath it. Estevez signed his name on this line. "Imida Estevez" signed a line marked "Attest" next to Estevez' signature.

By mid-1981, the installment loan was in default. In August of 1981, Bernardi repurchased the delinquent account from CIT, CIT reassigned all its rights to Bernardi and this suit on the guaranty followed. Great Lakes argued in the district court that it had only guaranteed the debt of Andres Estevez Car Wash, and not the debts of Finest, the corporate form of the debtor. The district court rejected this theory, finding that: "The two [Finest and Estevez Car Wash] are in fact one and the same.... The incorporation changed nothing but the form of the business, which is not sufficient to discharge the guarantor." The court entered judgment for the plaintiffs in the amount of $79,893.01 and this appeal followed.

## II

■ Great Lakes argues first that the district court erred in denying defendant's motion for summary judgment because as a matter of law Great Lakes' obligations under the guaranty were extinguished by material changes in the guaranteed obligation. It is fundamental that "a guarantor is not liable for anything which he did not agree to and if the creditor and principal have entered into an agreement materially different from that contemplated by the instrument of guaranty, the guarantor shall be released." *Claude Southern Corp. v. Henry's Drive-In, Inc.,* 51 Ill.App.2d 289, 201 N.E.2d 127, 132 (1964); 20 Illinois Law and Practice, *Guaranty* § 63 (1956); Annot., 69 A.L.R.3d 567, 572 (1976). But, as this court has said: "Unless there is some material change in the business dealings between the debtor and the creditor-guarantee and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged." *Essex International, Inc. v. Clamage,* 440 F.2d 547, 550 (7th Cir.1971) (applying Illinois law). Thus, we must determine whether the incorporation and name change of the car wash business was a "material" change in the loan relationship so as to justify releasing Great Lakes from its guaranty obligations.

■ Many cases have addressed the question of materiality of change. On the one hand, it is clear that a mere change in the name of a debtor (without a change in legal status) does not release a guarantor from liability. *Scovill Manufacturing Co. v. Cassidy,* 275 Ill. 462, 114 N.E. 181 (1916). On the other hand, a guarantor is released from its obligations where the entity whose debts are guaranteed undergoes a change which significantly changes the nature of the guarantor's undertaking; an alteration in risk is particularly pertinent to materiality. Thus, in *Teledyne Mid-America Corp. v. Hoh Corp.,* 486 F.2d 987 (9th Cir.1973), a married couple guaranteed the debts of a sole proprietorship run by the husband. Some time later, the business was incorporated, new stockholders acquired more than a 50% interest in the business and the corporation merged into another corporation.

The *Teledyne* court refused to hold the guarantors liable for the debts of the corporate entity, since fundamental changes had occurred in the nature of the entity whose debts were guaranteed. *Id.* at 991.

█ Here we agree with the district court that the circumstances before us do not entail a material change in the guaranty entered into by Great Lakes. While here there has been more than a mere change of name, as in *Scovill,* events have not resulted in any material change in Great Lakes' obligation. One fundamental aspect of the transaction brings the case closer to *Scovill* than, for example, to *Teledyne.* Great Lakes, through its written guaranty, agreed to guarantee the debts of the "Andre Estevez Car Wash," an entity which was a sole proprietorship at the time this guaranty was made. Since the time of that guaranty, Andres Estevez has remained *personally liable* for the debt in question.[2] The only significant change which has presumably occurred in the economic relationships of the parties as a result of Finest's incorporation has been the division of what were Estevez' personal assets into the corporate assets of Finest and what remain as the personal assets of Andres Estevez. Because both pools of assets remained available to satisfy the claims of the car wash business' creditors, we think that there has been no material change in the nature of the debts which Great Lakes guaranteed or increase in Great Lakes' risk in connection with them.[3]

While appellant contends on appeal that Estevez never personally guaranteed Finest's debts, we reject this contention.[4] First, a default judgment has been entered against Estevez on his guaranty; this means that Estevez, if he had any assets, would be fully liable for the debt in question. While this default judgment may or may not definitively establish Estevez' original status as a guarantor, it does conclusively demonstrate that, as matters now stand, Estevez is, indeed, fully liable for Finest's debts. Second, the guaranty which Estevez signed on March 26, 1979 bound him as a guarantor of Finest's debts. The document, taken as a whole, was intended to be a guaranty by Estevez of the debt of Finest. Appellant's argument that Estevez signed in his capacity as president of Finest makes no sense. Estevez could not presumably have intended to execute a document which served only to commit Finest to guarantee the debts of Finest. Estevez in fact followed the instructions for individual guarantors which were printed on the form, signing his name alone, instead of writing "Andres Estevez, President." The mere fact that Estevez signed his name on the wrong line of the form (which had "President" printed below it) is an insufficient basis for our concluding that Estevez intended to make a meaningless guaranty. Finally, although the matter has apparently not been raised earlier in these proceedings, there is a document in the record, styled a "Proposal" for the sale of the equipment involved here, which has all the indicia of a valid contract of sale for this equipment between Great Lakes and "Andres Estevez." While we are not in a position to determine the precise legal significance of this document, the obligations created under it, running as they do to Estevez *personally,* seem to present one additional reason why Great Lakes was not meaningfully affected by the incorporation of the car wash.

---

**2.** This fact distinguishes this case from *Wheeling Steel Corp. v. Neu,* 90 F.2d 139 (8th Cir. 1937). *Wheeling* involved facts similar to the case before us, except that in *Wheeling* there was no continuing personal liability on the part of the proprietor who incorporated his business.

**3.** In fact, since the guaranty was originally directed to Estevez personally, as long as he remains personally liable, the obligation of the guarantor would not, presumably, be materially changed.

**4.** At oral argument, appellee suggested that appellant was precluded from raising this argument because it did not raise this contention in the district court. This court will not normally address issues which were not initially raised in the district court, but we think, in any event, that the matter is easily disposed of on the merits.

Thus, it is clear that the incorporation of Estevez' car wash business did not materially affect the obligation of Great Lakes as a guarantor of the car wash's debts. Great Lakes agreed to guarantee the debts of Estevez' business. Estevez was liable for these debts before the guaranty was signed and had never been discharged from this personal liability. Great Lakes has failed to demonstrate how its position has been materially affected by the incorporation.

Appellant also contends that, because there were genuine issues of material fact, the district court erred in granting summary judgment. Appellant attempts to create factual issues involving the extent of Great Lakes' knowledge of the incorporation and name change and involving Estevez' relationship with Finest after its incorporation. We have reviewed the affidavits and other submissions and find that the district court was correct in concluding that no material issues of fact existed.

We therefore AFFIRM the judgment of the district court.