ALTON BANKING & TRUST COMPANY, Plaintiff-Appellee, v. JESSE R. SWEENEY et al., Defendants-Appellants.

Fifth District  No. 5—84—0134

Opinion filed June 24, 1985.

Stanford J. Carp, of Clayton, Missouri, for appellant Nancy J. Sweeney.

Ronald C. Mottaz, of Thomas, Mottaz, Eastman & Sherwood, of Alton, for appellee.

PRESIDING JUSTICE JONES delivered the opinion of the court:

This appeal is taken from a judgment finding the defendant, Nancy Sweeney, liable on promissory notes executed to the plaintiff, Alton Banking & Trust Company (bank), in connection with the operation of an automobile dealership by the defendant and her purported husband, Jesse Sweeney. The bank had originally obtained judgments by confession against both Nancy and Jesse Sweeney in three separate actions on notes to the bank, and Nancy Sweeney subsequently filed motions to open judgment in each case. The trial court granted these motions, opening judgment as to Nancy Sweeney, and the original judgments by confession became final as to Jesse Sweeney, who filed no motion to open judgment. Following trial on the merits in the three actions, which were consolidated for trial, the trial court found Nancy Sweeney to be liable on the notes in question and entered judgment accordingly. Nancy Sweeney appeals from this judgment, contending that she was released from liability on her personal guaranty of the notes because of a material change in the nature of the parties' business and that she was not liable for notes that had been signed in

blank and completed after she was no longer involved in the business. We affirm.

As indicated, the instant appeal involves three groups of notes that were the subject of the actions consolidated for trial. The notes in case No. 81—L—204 (hereinafter case 204) were executed from August 1, 1980, to October 6, 1980, and contained two signature lines. The first line, prefaced by the word "Name" with the word "Dealer" printed below the line, contained the typewritten name of "Auto House." Immediately below was a line prefaced by the word "By" with the words "Owner, Partner or Officer" printed below it. This line contained the signature of Nancy Sweeney. The total liability on these notes was $8,350 plus interest.

The notes in case No. 81—L—205 (hereinafter case 205) were executed on January 4, 1980, and January 11, 1980, for a total liability of $28,935 plus interest. The first of these notes contained the name "Sweeney Chrysler Plymouth" on the line designated "Dealer" and was signed by Nancy Sweeney on the line designated "Owner, Partner or Officer." The second note also contained the name "Sweeney Chrysler Plymouth" on the line designated "Dealer" but was signed both by Lori McCoy, followed by the designation "Atty. in Fact," and by Nancy Sweeney.

The notes in case No. 81—L—206 (hereinafter case 206) were executed on January 7, 1980, and January 11, 1980, for a total liability of $101,895.66 plus interest. All the notes were in the name of Sweeney Chrysler Plymouth and were signed by Lori McCoy, with the designation "Atty. in Fact." On all the notes except one, Nancy Sweeney had signed as endorser on the reverse side of the note under language guaranteeing payment of the note. Nancy Sweeney's name did not appear on a note for $5,600 dated January 7, 1980.

Although not directly involved in this appeal, a fourth group of notes in case No. 81—L—207 (hereinafter case 207) were executed from August to December 1980 in the name of Auto House and signed by "Jesse Sweeney, Owner" on the line designated "Owner, Partner or Officer." The bank had obtained a judgment by confession against Jesse Sweeney on these notes and had subsequently amended its complaints against Nancy Sweeney after the opening of judgment in cases 204, 205 and 206 to assert liability against Nancy Sweeney on the notes in case 207 as a partner of Jesse Sweeney. The trial court found that Nancy Sweeney was not liable on the notes in case 207 and entered judgment in her favor. Since the bank did not appeal from that judgment, case 207 is not involved in this appeal.

Evidence at trial regarding execution of the notes in question re-

vealed that Nancy and Jesse Sweeney had come to Alton in early 1974 to open a used car sales operation known as Auto House. They had previously operated a used car business in St. Charles, Missouri, for about 10 years. In Alton, the Sweeneys purchased property by contract for deed as husband and wife in joint tenancy for use in starting Auto House. Rental income from part of the property went into the Auto House bank account, and all contract payments and property expenses were paid out of the business account.

In January 1974 Auto House set up a line of credit with the bank in order to finance the purchase of automobiles for resale. Nancy Sweeney did not sign this floor plan financing agreement, but on January 29, 1974, both Nancy and Jesse Sweeney executed a personal guaranty of the indebtedness of Auto House with no monetary limit. The personal guaranty provided for the termination of future individual obligations under the guaranty upon receipt of written notice to the bank. Nancy and Jesse Sweeney also executed a signature card for the Auto House account, which contained no designation as to the type of business involved but merely stated "individual, partner or firm." As part of the agreement with the bank, collateral damage insurance was obtained in the names of Nancy and Jesse Sweeney "DBA Auto House," with the bank named as payee for any loss.

Under the floor plan financing agreement, the bank agreed to honor drafts that were written to sellers of vehicles purchased for Auto House. In return, notes, bills of sale and trust receipts were executed by the debtors evidencing the advancement of credit for the used car purchases. It was the practice of the bank in such financing arrangements to have the borrower sign the credit documents in blank to enable the bank to record information regarding the automobiles' serial numbers and the bank's security interest therein as soon as drafts were drawn on the borrower's credit. This practice was followed with the Sweeneys, and copies of the completed documents, consisting of the note, trust receipt and bill of sale, were always delivered to the Sweeneys. At no time did the Sweeneys object to signing these documents in blank. Nancy Sweeney occasionally signed the trust receipts at the business and brought the credit documents in later to the bank. Most of the bank's contacts with the Sweeneys were with Nancy Sweeney, as she was in charge of the office while Jesse Sweeney was involved with purchasing inventory for sale.

In April 1975 Jesse Sweeney entered into a direct dealer agreement with Chrysler Motors Corporation, and the Auto House name was changed to Sweeney Chrysler Plymouth, a new car Chrysler dealership. This agreement listed Jesse Sweeney as the sole owner of

Sweeney Chrysler Plymouth. On April 3, 1975, an amendment was added to the floor plan financing agreement with the bank, stating, "We acknowledge the change on this agreement from AUTO HOUSE to SWEENEY CHRYSLER PLYMOUTH, with all other terms being the same." This amendment, and an identical amendment added to the personal guaranty agreement of January 29, 1974, were signed only by Jesse Sweeney, with an employee of the bank signing as witness. In addition, a "Certificate of Sole Ownership" was executed, listing Jesse Sweeney as sole owner of Sweeney Chrysler Plymouth and authorizing both Nancy and Jesse Sweeney to sign checks of the company and to borrow money on its behalf.

A bank employee, Lori McCoy, was authorized pursuant to a power of attorney executed by Jesse Sweeney to complete and sign credit documents for Sweeney Chrysler Plymouth so that drafts coming into the bank on new cars from Chrysler could be paid on the same day. Later, when the bank wished to consolidate notes on which some of the vehicles had been purchased, Lori McCoy signed the consolidation notes as "attorney in fact," and Nancy Sweeney was asked to come in and sign the notes for the dealership. While the notes dated January 11, 1980, in both cases 205 and 206 were executed in this manner, in case 206 Lori McCoy signed the note with Nancy Sweeney signing as endorser on the reverse side of the note.

Nancy Sweeney testified at trial that she was involved in the operation of both Auto House and Sweeney Chrysler Plymouth from March 1974 until May 1978. Throughout this period she worked at the business six and sometimes seven days a week. Although the Sweeneys had represented themselves to be husband and wife, they were never actually married, and, after their personal relationship ended in May 1978, Nancy Sweeney ceased her day-to-day involvement with the business, returning only one day a week to help with the office work.

The Chrysler dealership went out of business in late 1979, and the business was continued in 1980 under the name Auto House. The bank account was changed from Sweeney Chrysler Plymouth to Auto House, although checks were drawn on the Sweeney Chrysler Plymouth account as late as March 1980. Nancy Sweeney was never authorized to sign checks on the Auto House account. On March 7, 1980, Nancy Sweeney notified the bank through a letter from her attorney that she wished to terminate her personal guaranty with the bank.

A purported "marital settlement agreement" was executed between Nancy and Jesse Sweeney in February 1980 in which Jesse Sweeney quit-claimed all equitable interest in their real property un-

der the contracts for deed to Nancy Sweeney and she gave up all interest in the business. Checks were drawn on the business account for contract payments and repairs to the buildings through March 1980, when Nancy began making these payments from her personal account.

On February 10, 1981, the bank obtained judgment by confession in case 204 against Jesse and Nancy Sweeney, d/b/a Auto House, and against Nancy and Jesse Sweeney individually. Judgment was obtained in cases 205 and 206 against Jesse and Nancy Sweeney, d/b/a Sweeney Chrysler Plymouth, and against Nancy and Jesse Sweeney individually, while in case 207, judgment was obtained against Jesse Sweeney only. Nancy Sweeney filed a motion and affidavit to open judgment in cases 204, 205 and 206 on the basis that the notes were executed without consideration and were signed in blank and completed without her authorization. The court granted the motions to open judgment, and the bank subsequently amended its complaints in the three cases to assert liability against Nancy Sweeney on the notes in case 207 on the grounds that she had held herself out to be a partner of Jesse Sweeney in Auto House and was thus liable for partnership debts. The three cases were consolidated for trial, and the trial court, without stating a reason for its findings, found that Nancy Sweeney was liable on the notes in cases 204, 205 and 206 but was not liable on the notes in case 207 and entered judgment accordingly.

On appeal from this judgment Nancy Sweeney contends initially that she was not liable under Illinois guaranty law on the notes in cases 205 and 206. Although the notes in these cases were executed in January 1980 before the bank received notice revoking her personal guarantee in March 1980, Nancy Sweeney asserts that she was discharged of her obligation under the guaranty because of a material change in the nature of the business when Auto House became Sweeney Chrysler Plymouth in April 1975. Since she did not sign the amendment to the guaranty of January 29, 1974, acknowledging the change of name from Auto House to Sweeney Chrysler Plymouth in April 1975, Nancy Sweeney contends that she cannot be held liable by its terms for any indebtedness incurred by the business after that time.

■ It is fundamental that a guarantor is not liable for anything that was not agreed to, and, if the creditor and debtor-principal have entered into an agreement materially different from that contemplated by the instrument of guaranty, the guarantor shall be released. (*Bernardi Brothers, Inc. v. Great Lakes Distributing, Inc.* (7th Cir. 1983), 712 F.2d 1205; *Claude Southern Corp. v. Henry's Drive-In,*

*Inc.* (1964), 51 Ill. App. 2d 289, 201 N.E.2d 127.) Unless there is some material change in the business dealings between the debtor and the creditor-guarantee, however, and some increase in the risk undertaken by the guarantor, the obligation of the guarantor is not discharged. (*Bernardi Brothers, Inc. v. Great Lakes Distributing, Inc.* (7th Cir. 1983), 712 F.2d 1205; *Essex International, Inc. v. Clamage* (7th Cir. 1971), 440 F.2d 547.) A mere change in the name of the debtor without a change in legal status does not constitute a material change so as to release the guarantor from liability (*Scovill Manufacturing Co. v. Cassidy* (1916), 275 Ill. 462, 114 N.E. 181); rather, there must be some change in the entity whose debts are guaranteed that significantly alters the nature of the guarantor's undertaking and results in increased risk to the guarantor. *Bernardi Brothers, Inc. v. Great Lakes Distributing, Inc.* (7th Cir. 1983), 712 F.2d 1205; *Essex International, Inc. v. Clamage* (7th Cir. 1971), 440 F.2d 547.

In the instant case Nancy Sweeney contends that the change in the business from a used car lot (Auto House) to a Chrysler Plymouth dealership (Sweeney Chrysler Plymouth), involving the sales and servicing of new and used cars, was a material change warranting her discharge from the personal guaranty signed by her on January 29, 1974. She notes specifically that Sweeney Chrysler Plymouth was a "bigger operation" than Auto House and "sold more cars," resulting in increased borrowings as evidenced by the notes in cases 205 and 206. Further, while Auto House, as a used car lot, operated without outside restrictions on its day-to-day activities, Sweeney Chrysler Plymouth was bound by the sales and reporting requirements set forth in the direct dealer agreement with Chrysler. Finally, she asserts that, upon the change to Sweeney Chrysler Plymouth, it became clear that Jesse Sweeney was operating the business as a sole proprietorship rather than as a partnership comprised of Jesse and Nancy Sweeney and that this "change in ownership" constituted a material change releasing her from her obligation as a guarantor.

■ We find no basis in the evidence for this latter assertion that the change to Sweeney Chrysler Plymouth entailed a change in ownership of the business, as the testimony was unclear regarding the status and ownership of the original Auto House business. While Nancy Sweeney testified that the Sweeneys operated the Auto House business "as a husband and wife" and subsequently "dissolved" into a sole proprietorship to become a Chrysler Plymouth dealership, Jesse Sweeney testified that he owned both the original Auto House and Sweeney Chrysler Plymouth as sole proprietorships. The business continued to operate throughout this period on property owned jointly by

Nancy and Jesse Sweeney, with contract payments made on the property from the business account and rental income deposited in it. In any event, Jesse Sween remained personally liable on the indebtedness of the dealership after the change to Sweeney Chrysler Plymouth as he had before. (*Cf. Bernardi Brothers, Inc. v. Great Lakes Distributing, Inc.* (7th Cir. 1983), 712 F.2d 1205 (no material change in guaranty obligation for debts of sole proprietorship car wash where owner-debtor remained personally liable on debt in question after incorporation of car wash).) In light of the ambiguity regarding the legal status of the business and the ownership of assets involved, it cannot be said that the change from Auto House to Sweeney Chrysler Plymouth constituted a change in ownership affecting the guarantor's obligation.

■■ The other changes in the business cited by Nancy Sweeney are likewise insufficient to warrant her discharge as guarantor. While she asserts that the increased volume of business of Sweeney Chrysler Plymouth resulted in increased risk to her as a guarantor, the guaranty agreement itself contained no monetary limit on the amount of indebtedness guaranteed. Thus, it cannot be claimed that the amount of indebtedness exceeded the amount specified or contemplated in the original guaranty. Moreover, notwithstanding the changes in day-to-day operations occasioned by the change to a new car dealership, the same floor plan financing agreement remained between the debtor and the bank, the same signatures were valid on checks and notes, and, most importantly, the same personal and real property assets remained to satisfy the claims of creditors. Because of her continued involvement with the business following the change of name to Sweeney Chrysler Plymouth in April 1975, Nancy Sweeney was aware of any substantial change affecting her liability as a guarantor and yet made no attempt to revoke her guaranty until March 1980. The rule discharging a guarantor upon a material alteration in the underlying obligation has no application where the guarantor has knowledge of and impliedly consents to such change. (*Lawndale Steel Co. v. Appel* (1981), 98 Ill. App. 3d 167, 423 N.E.2d 957.) Since Nancy Sweeney knew of and apparently assented to any change in the business as Sweeney Chrysler Plymouth and since this change did not involve an increase in liability beyond that specified in the guaranty of January 29, 1974, we find no basis for holding that Nancy Sweeney was relieved of her guaranty upon the change from Auto House to Sweeney Chrysler Plymouth. For this reason, we affirm the trial court's ruling that Nancy Sweeney was liable on the notes in cases 205 and 206, which were executed before her guaranty was revoked

in March 1980.

Nancy Sweeney next contends that she was not liable on the notes in case 204 because these notes had been signed in blank by her on behalf of Auto House and completed at a later time when the bank was aware that she was no longer involved in the operation of the business. The notes in question were executed in the name of Auto House from August to October 1980 after the Sweeney Chrysler Plymouth dealership had ended. Since Nancy Sweeney had revoked her personal guaranty of the indebtedness of the business at that time, she could not be liable on these notes as a guarantor. The bank asserts, however, that Nancy Sweeney signed the notes in case 204 as a maker without qualification or designation of a representative capacity and thus must be held liable as a maker of the notes.

While it was uncontroverted that Nancy Sweeney had, from time to time, signed notes in blank to be completed by the bank for purposes of the floor plan financing agreement between the bank and the dealership, the evidence failed to establish that the notes in case 204 were completed in a manner other than as intended so as to discharge the maker of the notes. (See Ill. Rev. Stat. 1981, ch. 26, par. 3—115.) The evidence did not indicate when the notes were actually signed by Nancy Sweeney, and, even if such notes had been signed prior to March 7, 1980, when Nancy Sweeney revoked her personal guaranty on the indebtedness of the business, this notice of revocation was not, as Nancy Sweeney asserts, sufficient to "void" any blank notes that had been signed before that time. Contrary to Nancy Sweeney's assertion, moreover, that the bank was aware through its employees that she was no longer involved in the business of Auto House at the time the notes were completed, the bank's employees testified at trial that Nancy Sweeney still signed checks and "did things" at the business after March 1980 and, indeed, was assumed to be a part of the business until shortly before the bank brought suit on the notes in February 1981. The burden of showing unauthorized completion of an instrument signed in blank is upon the party attacking the instrument (Ill. Rev. Stat. 1981, ch. 26, par. 3—115(2)), and Nancy Sweeney has failed to sustain this burden regarding the notes in case 204.

We likewise find no merit in Nancy Sweeney's contention that even if the notes were valid as completed, Auto House alone was liable as maker since she was not a partner of Auto House and thus could not be personally liable on the notes. Nancy Sweeney signed the notes under the name of Auto House on the line designated "Owner, Partner or Officer," with no other indication of the capacity in which she was signing. Both terms "Owner" and "Partner" identify one

signing as a principal rather than in a representative capacity, and since Auto House was not a corporation, Nancy Sweeney could not have signed as an officer of the business. Whether owned as a sole proprietorship or a partnership, "Auto House" was merely a name under which business was carried on and not an entity apart from the individuals acting for it. Notwithstanding Nancy Sweeney's assertions that she had no part of the Auto House business that resumed after the Sweeney Chrysler Plymouth dealership ended, her signature on the notes in case 204 with no designation of a representative capacity served to impose liability on her as a maker of the notes. See Ill. Rev. Stat. 1981, ch. 26, par. 3—413.

We note further that even if extrinsic evidence were considered to determine the capacity in which Nancy Sweeney signed the notes in question (see Ill. Rev. Stat. 1981, ch. 26, par. 3—403(2)); *First National Bank v. Achilli* (1973), 14 Ill. App. 3d 1, 301 N.E.2d 739), the "certificate of sole ownership" designating Nancy Sweeney as an authorized representative of Sweeney Chrysler Plymouth would have no bearing on the question of her relationship to the second Auto House or its status as a partnership or sole proprietorship. In the absence of other evidence showing that Nancy Sweeney signed the notes in case 204 in a representative capacity only, we affirm the trial court's finding of liability against Nancy Sweeney on these notes.

Affirmed.

KASSERMAN and KARNS, JJ., concur.