In re **KRESS ROAD PARTNERSHIP,** Debtor.

**KRESS ROAD PARTNERSHIP,** Plaintiff,

v.

**CHICAGO TITLE AND TRUST COMPANY, Defendants.**

**Bankruptcy Nos. B 05776, 90 A 0242.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Oct. 9, 1991.

See also 134 B.R. 301.

F. Dean Armstrong of F. Dean Armstrong, P.C., Flossmoor, Ill., for plaintiff.

William R. Yowell of Associate Gen. Counsel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

### JOHN D. SCHWARTZ, Chief Judge.

Chicago, Title and Trust Company ("CT & T" or "Trustee"), has moved for summary judgment on count three[1] of the First Amended Complaint and Jury Demand ("Complaint") of the Plaintiff–Debtor, Kress Road Partnership ("Kress Road" or "Partnership"). For the reasons set forth herein, the court after considering the pleadings, exhibits, affidavits and memoranda filed, does hereby grant CT & T's motion.

## FACTS AND BACKGROUND

The following facts are taken from CT & T's statement of uncontested facts[2] and the Complaint. In June of 1980, Louis Ross ("Ross") and Francis Callaghan ("Callaghan") were attempting to find individuals to invest with them in a limited partnership to develop property. (Complaint at ¶ 5). On July 1, 1980, various individuals entered into a limited partnership agreement ("Partnership Agreement") with Callaghan and Ross Development Corporation ("CRDC"), a company owned by Callaghan and Ross.[3] (Complaint, Ex. A). Pursuant to the Partnership Agreement, CRDC was the general partner holding a ten percent interest in the profits and losses of the Partnership with the remaining ninety percent spread among the limited partners. (Complaint, Ex. A at ¶ 7). The purpose of the Partnership was to "acquire" and "evaluate further construction" on ten acres of real estate improved with a partially completed building located in DuPage County, Illinois ("Property"). (Complaint, Ex. A at ¶ 3).

Pursuant to the Partnership Agreement, the limited partners put up $125,000 and CRDC borrowed $150,000 from Heritage Bank of Oakwood secured by a mortgage on the Property. (Complaint at ¶ 7). The Partnership purchased the Property for $250,000 and placed the Property in a land trust with Heritage Standard Bank and Trust ("Heritage") as trustee.

The Partnership Agreement provided: "the General Partner is hereby designated and given authority on behalf of the Partnership to sign, seal, deliver and accept ... warranty deeds ... mortgages and any and all other documents necessary or incidental to the sale, transfer, assignment or evidencing of indebtedness of the Partnership." (Complaint, Ex. A at 3). The Partnership Agreement further stated: "General Partner may not sell, mortgage or refinance any mortgage on the Partnership's real estate or other property ... without prior written consent of Partners owning 51% of the capital interest in the partnership." (Complaint, Ex. A at ¶ 14). A certificate of limited partnership was filed by CRDC with the Recorder of Deeds for DuPage County. (CT & T's Motion for Summary Judgment, Ex. 2). The certificate contained no reference to the restriction on CRDC to act with respect to the Property nor is it recorded in the chain of title of the Property.

The Complaint alleges that in January of 1986, Callaghan and Ross, without the knowledge or consent of the limited partners, caused the Property to be conveyed to a land trust with the defendant Chicago Title and Trust Company as trustee ("CT & T" or "Trustee").[4] The Property was con-

---

1. CT & T is the only named defendant in count three. CT & T is not a defendant in the other counts of the Complaint except count nine which requests attorneys' fees from all of the defendants in this adversary.

2. Because Kress Road failed to file a statement of uncontested facts as required by local rule 12(n), all facts set forth in CT & T's statement of uncontested facts are deemed admitted for purposes of this motion.

3. At all relevant times throughout the history of Kress Road, Callaghan was the President and Ross was the Secretary of CRDC.

4. Callaghan and Ross did not violate the Partnership Agreement by moving the Property to a land trust with CT & T as Trustee without the consent of 51% of the limited partners.

veyed from Heritage, the original land trustee, through a nominee, Immaculate G. Compagnoni, to CT & T under Trust No. 1087414. (CT & T's Motion for Summary Judgment, Exs. 8 & 9). The land trust agreement entered on January 20, 1986 was signed by CRDC by Callaghan and Ross and bore the legend "Amended." (Complaint, Ex. C).[5] The Amended Land Trust Agreement provided that title to the Property was placed in trust with CT & T as Trustee, Kress Road as beneficiary, with the power of direction in CRDC. All notices or inquiries concerning the Property were to be sent to Callaghan and Ross Financial Corporation. (Complaint, Ex. C).

The Amended Land Trust Agreement provided in relevant part: "It is agreed by the parties and by any person who may hereafter acquire any interest in this trust, that the trustee will deal with the trust property ... only when authorized to do so in writing." The Amended Land Trust Agreement further stated: "On the written direction of the party or parties designated on the reverse side as having the power of direction, the trustee will make deeds for, or mortgages or trust deeds...."

The Complaint alleges that Callaghan and Ross, without knowledge or consent of 51% of the limited partners, arranged to refinance the existing mortgage through a $635,000 construction loan from First Federal Savings and Loan of Elgin ("First Federal"). A letter of direction to the CT & T dated April 2, 1986 signed by CRDC, Callaghan, Ross and Harris Bank–Glencoe directed CT & T as Trustee to execute a mortgage and mortgage note to First Federal and to pay $208,777.78 of the proceeds to Harris Bank–Glencoe per its pay off letter.[6] (CT & T's Motion for Summary Judgment, Ex. 1).

First Federal proceeded to loan $635,000 pursuant to a mortgage note ("Mortgage Note") and mortgage ("Mortgage") duly executed by CT & T as Trustee.[7] The Mortgage was dated March 14, 1986 and was recorded on April 10, 1986 as Document 86–3705. (Complaint, Ex. F). The Mortgage Note was dated March 14, 1986 and was due and payable on October 1, 1987. (Complaint, Ex. D).

First Federal deposited the sum of $596,-114 into Escrow 50609 at CT & T to cover Kress Road's construction draws. (CT & T's Motion for Summary Judgment, Ex. 11). The sum of $596,114 was subsequently paid out of Escrow 50609. Most if not all of the money went to improve the Property. (CT & T's Motion for Summary Judgment, Ex. 12).

On June 13, 1988, sometime after the maturity date on the Mortgage Note, attorneys for First Federal notified Ross and Callaghan Financial Corporation that the loan was in default. (Complaint, Ex. H). On November 18, 1988, First Federal commenced suit in the Circuit Court of DuPage County to foreclose on the Property. On November 22, 1989, First Federal obtained a default judgment of foreclosure in the total amount of $855,068.29. (Complaint, Ex. I).

On March 28, 1990, Kress Road commenced a bankruptcy case under Chapter 11. On April 3, 1990, Kress Road filed an adversary complaint against First Federal, Ross and Callaghan. On January 24, 1991, Kress Road filed a First Amended Complaint and Jury Demand adding CT & T and others as defendants. In Count three of the Amended Complaint, Kress Road alleg-

---

**5.** The Amended Land Trust Agreement is the same as the original, except that the Amended is correctly executed in the name of the beneficiary "Kress Road Partnership."

**6.** Apparently, the Harris Bank–Glencoe had the existing financing on the Property secured by an assignment of beneficial interest in the land trust.

**7.** Though the Mortgage Note names Callaghan & Ross Financial Corporation and Callaghan and Ross individually together with the Trustee as "Makers", the Mortgage Note itself shows that only the Trustee signed the Mortgage Note. Under Illinois law, only the party signing a note is considered the "maker." *See, e.g., Midwest Bank & Trust Co. v. Roderick*, 132 Ill.App.3d 463, 87 Ill.Dec. 334, 476 N.E.2d 1326 (1st Dist. 1985); *Alton Banking & Trust Co. v. Sweeney*, 135 Ill.App.3d 96, 89 Ill.Dec. 926, 481 N.E.2d 769 (5th Dist.1985); *Blackhawk Production Credit Assn. v. Bay*, 69 Ill.App.3d 239, 25 Ill.Dec. 726, 387 N.E.2d 382 (2d Dist.1979).

es that CT & T should have known about the restrictions in the Partnership Agreement pertaining to the authority of the general partner to place a mortgage on the Property. In essence, Kress Road alleges that CRDC had the duty to review the Partnership Agreement and that its failure to do so was a breach of fiduciary duty to its beneficiary, Kress Road. Kress Road seeks to recover from CT & T, actual damages of $1,000,000, punitive damages of at least three times the actual damages, interest and attorneys' fees.

## DISCUSSION

Kress Road alleges that CT & T owed a duty to review the terms of the Partnership Agreement before acting on the direction of CRDC to execute the Mortgage. Kress Road also alleges that CT & T was not properly authorized in writing to place the Mortgage on the Property. In its motion for summary judgment, CT & T argues that it was not guilty of any breach of duty to Kress Road because it had no knowledge of the Partnership Agreement or its restrictions and it complied with the terms of the Amended Land Trust Agreement and the Deed in Trust. CT & T also argues that the provision of the Partnership Agreement restricting the right of the general partner to mortgage the Property, is inconsistent with the overall purpose of the limited partnership—to acquire and develop the Property—and therefore must be disregarded.

In order to prevail on a motion for summary judgment, the movant must meet the statutory requirements as set forth in Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure. Rule 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate only if there remains no genuine issue of material fact for trial and the movant is entitled to judgment as a matter of law. *Moore v. Marketplace Restaurant, Inc.*, 754 F.2d 1336, 1339 (7th Cir. 1985). If a non-moving party fails to establish an element essential to the case on which the non-moving party has the burden of proof, summary judgment is appropriate. *Samuels v. Wilder*, 871 F.2d 1346, 1349 (7th Cir.1989). The facts alleged by the movant must be such that the court can reasonably conclude by a preponderance of the evidence that the movant is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *In re Calisoff,* 92 B.R. 346, 350–51 (Bankr.N.D.Ill.1988).

In addition, a motion for summary judgment must comply with the applicable provisions of Local Rule 12. Rule 12(m) of the General Rules of the United States District Court for the Northern District of Illinois requires a party moving for summary judgment to file a detailed statement of material facts as to which there is no genuine issue. Rule 12(n) in turn requires the party opposing the motion to file a statement of material facts as to which there is a genuine issue. All statements set forth in the 12(m) statement will be deemed admitted unless controverted in a 12(n) statement. In this case, Kress Road did not file a 12(n) statement. Therefore, CT & T's statement of uncontested facts are deemed admitted.

### 1. Illinois Land Trusts

■ The property rights in the assets of a debtor's estate are determined by the laws of the state in which the property is located. *See, Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Therefore, it is Illinois law to which the court must turn in determining the rights and obligations of the parties to this litigation.

Land trusts have a long and honored history in Illinois. That their existence is not always understood is not surprising as the Statute of Uses is a part of Illinois

common law. The Statute of Uses was initially adopted in 1536 under the reign of Henry VIII of England. "It sought to avoid the frustration of governmental authority and decreed that a use was to be executed and the title of the property vested in the beneficial owner. The English Courts, however, some nine years later, mitigated the effect of this legislation by holding that the Statute of Uses was not applicable to an active use or trust and, where the trustee had active duties to perform, the trust arrangement was valid and not to be executed by the Statute of Uses." HENRY W. KENOE, KENOE ON LAND TRUSTS 1.1 (Ill. Inst. for CLE 1989). Illinois courts have construed land trusts as active trusts and not affected by Statute of Uses. *See, Chicago Federal Savings and Loan Association v. Cacciatore,* 25 Ill.2d 535, 185 N.E.2d 670 (1962); *Old Orchard Bank and Trust Co v. Rodriguez,* 654 F.Supp. 108, 110 (N.D.Ill.1987). As stated in *Old Orchard,* it was "the trustee's duty to reconvey title after 20 years [that] took the trust out of the so-called 'dry trust' category deemed executed by the Statute of Uses." 654 F.Supp. at 110, n. 3.

■ In a typical land trust, the trustee holds title to the property and the beneficiary is given full management powers. *See, Southeast Village Associates v. Health Management Associates, Inc.,* 92 Ill.App.3d 810, 48 Ill.Dec. 294, 416 N.E.2d 325 (1st Dist.1981); KENOE ON LAND TRUSTS at 1.3. The trustee deals with the property only at the written direction of the beneficiary or the party with the power of direction. An excellent description of land trusts is found in *Robinson v. Chicago National Bank,* 32 Ill.App.2d 55, 176 N.E.2d 659, 661 (1961):

> The land trust is a device by which the real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all rights of ownership other than holding or dealing with the

legal title. The arrangement is created by two instruments. The deed in trust conveys the realty to the trustee. Contemporaneously with the deed in trust a trust agreement is executed. The pertinent provisions of the trust agreement are summarized as follows: While legal title to the real estate is held by the trustee, the beneficiaries retain 'the power of direction' to deal with the title, to manage and control the property, to receive proceeds from sales or mortgages and all rentals and avails on the property. *The trustee agrees to deal with the res of the trust only upon the written direction of the beneficiaries or the persons named as having power of direction ... The trustee is not required to 'inquire into the propriety of any direction' received from the authorized persons.* The trustee has no duties in respect to management or control of the property or to pay taxes, insurance or to be responsible for litigation. The only specified duties upon the trustee are to 'execute deeds or otherwise deal with the property upon the direction of the beneficiary or other named authorized persons.' Another duty of the trustee is to sell at public auction any property remaining in the trust twenty years from the date of the agreement.... The agreement forbids its recordation in the Recorder's Office or elsewhere and forbids the trustee to disclose the name of any beneficiary. (emphasis added).

■ As explained in the quote above, a land trust is created by two documents, the deed in trust and the trust agreement. The first document, the deed in trust, conveys title of the property to the land trustee. *Parkway Bank and Trust Co. v. Gleich,* 213 Ill.App.3d 444, 157 Ill.Dec. 591, 594–95, 572 N.E.2d 1055, 1058–59 (1st Dist. 1991). The deed in trust does not normally disclose the identity of the beneficiary or the terms of the trust agreement. *Id.* Because the deed in trust is the only recorded document, third parties can deal with the trustee without being required to examine the trust agreement. KENOE ON LAND TRUSTS at 2.2. The second document, the

trust agreement, sets forth the contractual rights and duties of the trustee and the beneficiary. It specifically provides that the trust agreement is not to be recorded and that no third party dealing with the trustee is required or privileged to inquire into the necessity or expediency of any act of the trustee.

■ There are four distinctive characteristics of every land trust. 1) The trustee is vested with legal and equitable title to the property and the beneficiary has no interest in either, 2) The trustee's only duties are to convey, mortgage or deal with the property on the written direction of the beneficiary and to sell the property at the termination of the trust, 3) The beneficiary has the right to possess, manage, and control the property, as well as the rights to rents, profits and proceeds of a sale or financing of the property, and 4) The beneficiary's interest in the property is personal property. KENOE ON LAW TRUSTS at 1.3.

■ In determining the relationship between the parties, it is important to keep the powers of the trustee and the beneficiary distinct. In operating the property, the beneficiary is not the agent of the trustee and cannot create a liability against the trustee. *See, Feinberg v. Great Atlantic & Pacific Tea Co.*, 131 Ill.App.2d 1087, 266 N.E.2d 401, 404 (1st Dist.1970) citing HENRY W. KENOE, LAND TRUSTS 43–44 (Chicago Bar Assoc. 1967) ("One of the most common errors is for a beneficiary to execute a lease in the name of the land trustee by himself as agent. Such a lease is meaningless and not binding upon the trustee since the beneficiary is not an agent or the trustee"). Just as a beneficiary is not an agent of the trustee, the trustee is not an agent of the beneficiary. When the trustee of a land trust performs his duties as described in the trust agreement, he is acting as principal and not as agent of the beneficiary.[8] *See Barkhausen v. Continental Illinois Nat. Bank &*

*Trust Co.*, 3 Ill.2d 254, 120 N.E.2d 649 (1954), *cert den.*, 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 705 (1954).

A definitive scholar on land trusts, Henry Kenoe, explains the rights of the parties when a lien is placed on trust property. "A security transaction involving the legal and equitable title of the property held in the land trust must obviously designate the land trustee as the mortgagor and be signed by it ... In every instance in which a mortgage or trust deed was executed for the purpose of securing an obligation of the trust estate, these instruments have been executed by the land trustee and indeed they should be." KENOE ON LAND TRUSTS at 5.25. Kenoe further explains, "[t]he authority of the land trustee to execute instruments creating a mortgage lien upon the trust property is fully expressed in the deed in trust as, for example, 'The full power and authority is hereby granted to said trustee ... to mortgage, pledge or otherwise encumber said property, or any part thereof.'" *Id.*

### 2. CT & T's Fiduciary Duty to Kress Road

■ As a threshold issue, the court must determine whether CT & T as land trustee, owed fiduciary duties to its beneficiary, Kress Road. Kress Road argues that under *Home Federal Savings and Loan Ass'n v. Zarkin*, 89 Ill.2d 232, 59 Ill.Dec. 897, 901, 432 N.E.2d 841, 845 (1982), land trustees are "subject to the fiduciary duties imposed by the law on all trustees." In *Zarkin*, the Illinois Supreme Court stated, "[t]he fiduciary obligation of loyalty flows not from the trust instrument but from the relationship of trustee and beneficiary." *Id.* 432 N.E.2d at 845. The court held that when the land trustee is also the secured creditor, the trustee has the burden of proving that the transaction was fair and that the trustee did not breach its fiduciary duty of loyalty. The court concluded that a land trustee/secured creditor's repurchase of the trust property after foreclosure was

---

**8.** Although a few courts have held that a beneficiary may be liable on a trustee's contract where the beneficiary retained control over the trustee and the management of the property, these cases deal with the beneficiary's liability to third parties and not the requirement that the beneficiary must be a party to such a contract to bind the property.

a breach of the trustee's fiduciary duty to its beneficiary.

The Illinois legislature reversed the holding in *Zarkin* when it adopted the Land Trust Act, Ill.Rev.Stat. ch. 148, para. 81–84. The Land Trust Act provides:

> The fact that a trustee of a land trust is or becomes a secured or unsecured creditor of the land trust, the beneficiaries of the land trust, or a third party whose debt to such creditor is guaranteed by a beneficiary of the land trust, shall not be a breach of, and shall not be deemed evidence of a breach of, any fiduciary duty owed by said trustee to the beneficiaries. Ill.Rev.Stat. ch. 148, para. 83 (West 1986).

Several courts have addressed the effect of the Land Trust Act on a trustee's fiduciary duties to it beneficiary. Some have held that the Land Trust Act does not remove all fiduciary duties of a land trustee. *See, Slovick v. All American Bank,* 163 Ill.App.3d 741, 114 Ill.Dec. 792, 795, 516 N.E.2d 947, 950 (1st Dist.1987) ("the legislature did not abolish all fiduciary duties for land trustees"); *Volini v. Dubas,* 190 Ill.App.3d 954, 138 Ill.Dec. 498, 500, 547 N.E.2d 665, 667 (2nd Dist.1989) ("We find no basis to conclude, as a matter of law, that all fiduciary duties of a land trustee to its beneficiary have been eliminated"). The court in *South Chicago Savings Bank v. South Chicago Savings,* 178 Ill.App.3d 545, 127 Ill.Dec. 608, 533 N.E.2d 480 (1st Dist.1988), however, held that the *Slovick* decision should be narrowly construed in light of the legislative intent in the Land Trust Act that land trusts be distinguished from other trusts.

This court agrees with the view set forth in *In re Grabill Corp. (Heritage Bank Tinley Park v. Steinberg),* 121 B.R. 983 (Bankr.N.D.Ill.1990) regarding a land trustee's duties to its beneficiary. The court in *Grabill,* held that if a land trustee is aware that the person with the power of direction is exercising his power improperly, the trustee should refuse to act and can be liable if it acts despite such awareness.

In *Grabill,* a bank/land trustee brought an adversary complaint to recover from the debtor's estate certain notes purportedly executed by the debtor's president. The trustee for the debtor's estate defended and asserted a counterclaim based on the bank's alleged breach of fiduciary duties which were allegedly owed the debtor under a land trust agreement. In *Grabill,* two land trusts were involved. Pursuant to one of the land trusts, the corporation and/or its president were beneficiaries. Under the other trust, the corporation alone was the beneficiary. The president of the debtor corporation directed the trustee of the land trusts to sign various promissory notes and security agreements secured by the trust property. The land trustee allowed the trust assets to be dissipated without proper corporate authorization by board resolution as required by the corporation's bylaws. The court in *Grabill* found that the trustee of the debtor's estate had sufficiently alleged a breach of fiduciary duty by the bank to survive a motion to dismiss. The court in *Grabill* based its holding on the fact that the bank knew that the corporate president was improperly exercising the corporation's power of direction. The court stated: "[t]he Trustee's third affirmative defense and his counterclaim rest upon the assumption ... that Heritage Bank was aware and knew that Stoecker was improperly exercising the powers of direction with respect to both the Grabill Trust and Westbank Trust, notwithstanding the fact that the actions taken by Heritage Bank as land trustee were taken on the written direction of the then holder of the power of direction of the land trusts." *Id.* at 1000.

■ The case at hand is clearly distinguishable from the situation in *Grabill.* There are absolutely no facts alleged or pleaded that CT & T knew or had any reason to know that CRDC was not authorized to exercise its power of direction under the land trust. The exhibits show that Kress Road was a limited partnership with a corporation, CRDC, as general partner. In any limited partnership, the general partner is the only entity that can bind the limited partnership. Therefore, CRDC had

**300**

the apparent authority to act for the Partnership with respect to the Property.

In placing the Mortgage on the Property, CT & T acted at the direction of CRDC. The power of direction on the Amended Land Trust Agreement lists CRDC with Callaghan as President and Ross as Secretary. On April 2, 1986, CRDC by Callaghan and Ross signed a power of direction, directing CT & T to execute the Mortgage and Mortgage Note. Thus, the Mortgage and Mortgage Note were executed by CT & T in accordance with the Amended Land Trust Agreement.

■ Kress Road relies on CT & T's Practice Guide and the depositions of two CT & T employees (Plaintiff's Response to Defendant CT & T's Motion For Summary Judgment, Exs. H, I, J) to demonstrate that it was the customary practice of CT & T to ask for a copy of the partnership agreement before executing a land trust agreement with a partnership as beneficiary. Even if CT & T had acted contrary to its own policies, that alone is not sufficient to find a violation of a fiduciary duty. CT & T must have known or had reason to know that a partnership agreement existed and that there were restrictions of some sort on the rights of the one holding the power of direction. *See, Grabill*, 121 B.R. at 1000.

■ In this case CT & T had no way of knowing that the Partnership Agreement existed or of the restrictions on CRDC. First, there is no requirement that a written partnership agreement exist in order for a limited partnership to exist. All that is required is the intent to form a partnership and a recorded certificate of limited partnership. *See Allen v. Amber Manor Apartments Partnership*, 95 Ill.App.3d 541, 51 Ill.Dec. 26, 420 N.E.2d 440 (1st Dist.1981). The limited partnership act in effect at the time the Partnership was formed provided: "Two or more persons desiring to form a limited partnership shall: (a) Sign and swear to a certificate, which shall state ... (b) File for record the certificate in the office of the recorder of the county where the principal office of such limited partnership is located .. (2) A limited partnership is formed if there has been substantial compliance in good faith with the requirements of paragraph (1). Ill.Rev. Stat. ch. 106½, para. 45 (West 1986). The statute makes no mention of a "partnership agreement." Second, the exhibits show that in March of 1986, CT & T requested a copy of Kress Road's Partnership Agreement. (Plaintiff's Response To Defendant CT & T's Motion For Summary Judgment, Ex. G). Previously Ross had informed CT & T, "we will be forwarding a partnership agreement as soon as it is prepared." (Plaintiff's Response To Defendant CT & T's Motion For Summary Judgment, Ex. E). There is no evidence that the Partnership Agreement was ever forwarded. Thus, CT & T had no means to discover the existence of the Partnership Agreements or its limitations on CRDC's authority to deal with the Property.

This case involves a balancing of equities. The question is who should bear the burden of Callaghan and Ross's actions that led to this litigation. The court believes the burden must fall on the Kress Road limited partners because they put CRDC in the position to act on their behalf as the general partner and were in the best position to prevent CRDC's actions.

The Kress Road limited partners chose to invest in Kress Road and place their trust in Callaghan and Ross. The limited partners in this case may have made a bad decision. By choosing the limited partnership form of investment coupled with a land trust, the limited partners clothed CRDC, the general partner, with the authority to act on behalf of Kress Road. Furthermore, for more than five years, none of the limited partners took any action to ensure that persons dealing with the Property would have knowledge of the restrictions on their general partner.

Judge Easterbrook in *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.1989), *cert. den.* 493 U.S. 893, 110 S.Ct. 241, 107 L.Ed.2d 191 (1989), had occasion to comment on facts not too dissimilar from the ones present in this case. In *Belisle*, Plunkett, the debtor, signed a contract to buy a leasehold for 1.2 million. Plunkett formed five partnerships to raise money for the acquisition of the

leasehold. After receiving the funds, Plunkett closed on the leasehold in his own name despite using partnership funds. Shortly thereafter, Plunkett filed for bankruptcy. The trustee asserted that the leasehold was an asset of the debtor's estate and the partners sought to quiet title to the partnership property.

The court in *Belisle* held that the leasehold interest was held in constructive trust but could nevertheless be brought into the debtor's bankruptcy estate pursuant to the trustee's § 544(a)(3) strong arm powers. Judge Easterbrook stated, "Plunkett bamboozled the partners and used for his own benefit the leasehold acquired with partnership funds. *Id.* at 513. "A bona fide purchaser from Plunkett would have taken ahead of the partners under local law. They neglected to record the partnerships' interest, though recording is easy. (The partners could, and in retrospect should, have refused to invest funds except through an escrow agent, who would have held the cash until good title had been recorded in the partnerships' names.) One of Plunkett's creditors, extending $100,000 against a collateral assignment of the leasehold, actually obtained a position superior to that of the partners." *Id.* at 515. What Judge Easterbrook is in effect saying is that if you give someone the power to act on your behalf you have to accept the results of that person's actions or take some action to ensure that the other person is acting according to your wishes.

Kress Road has not come forward with even a scintilla of evidence that anyone at CT & T knew or had reason to know of the restrictions on CRDC contained in the Partnership Agreement. CT & T did not breach its fiduciary duty to the Kress Road Partnership in following the directions of CRDC respecting the execution and delivery of the Mortgage on the Property. CT & T's motion for summary judgment on count three of the Complaint is granted.[9]

## CONCLUSION

The courts grants CT & T motion for summary judgment on count three of

Kress Road's First Amended Complaint and Jury Demand.

---

**9.** Because the court is granting summary judgment in favor of CT & T on count three, the request for attorneys' fees from CT & T in count nine becomes moot.