**OLD ORCHARD BANK AND TRUST COMPANY, Plaintiff,**

**v.**

**Alfred RODRIGUEZ, et al., Defendants.**

**No. 86 C 8752.**

United States District Court, N.D. Illinois, E.D.

Feb. 12, 1987.

Jeffrey B. Wood, Mitchell Edelson, Chicago, for plaintiff.

William F. Murphy, Asst. U.S. Atty., Chicago, for defendants.

## MEMORANDUM OPINION AND ORDER [1]

SHADUR, District Judge.

This mortgage foreclosure action was removed to this Court from the Circuit Court of Cook County under 28 U.S.C. § 1444 [2] by the United States, named as a defendant on the basis of this allegation in Complaint ¶ 5:

> 5. United States of America claims some right, title, or interest in the Premises pursuant to a Notice of Tax Levy dated September 22, 1981 against William F. Horsting and Eleanor W. Horsting, not of record, which interest, if any, is subject, subordinate, and inferior to the Trust Deed of Plaintiff described herein.

That allegation, if accurate, made the United States suable under Section 2410(a):

> Under the conditions prescribed in this section and section 1444 of this title for the protection of the United States, the United States may be named a party in any civil action or suit ... in any State court having jurisdiction of the subject matter— ...
>
> (2) to foreclose a mortgage or other lien upon, ...
>
> real or personal property on which the United States has or claims a mortgage or other lien.

As the facts developed, however, title to the real estate being foreclosed (a residence) has continuously been held in an Illinois land trust of which Old Orchard Bank & Trust Company ("Trustee") is trustee under its Trust No. 6824 dated November 14, 1968. Horstings' only asserted property interest has been as owners of the beneficial interest in the land trust, not of the real estate as such. As the United States' tax lien arises out of Horstings' personal tax liability, and not out of any tax liability of Trustee, that situation brings two propositions into play.

■ First, under 26 U.S.C. § 6321 ("IRC § 6321") the United States' tax lien attaches to "property" or "rights to property":

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

"Property" is a concept that draws its content from *state* law, not federal. Though the United States seeks to invoke *Aquilino v. United States*, 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1367 (1960) to limit that notion, *Aquilino* in fact reaffirms the definitive impact of state law (*id.* at 512–14, 80 S.Ct. at 1279–80) (citations and footnotes omitted):

> The threshold question in this case, as in all cases where the Federal Government asserts its tax lien, is whether and to what extent the taxpayer had "property" or "rights to property" to which the tax lien could attach. In answering that question, both federal and state courts must look to state law, for it has long been the rule that "in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property ... sought to be reached by the statute." ... Thus, as we held only two Terms ago, Section 3670 [now IRC

---

1. This opinion was originally delivered as an oral bench ruling remanding the case to the state court. Because the question it deals with is said to be a recurring one, government counsel has asked that the opinion be recast in publishable form. Accordingly, this opinion (though memorialized some days later) has been dated as of the time of the original ruling.

2. Further citations to the provisions of the Judicial Code will take the form "Section—," referring to the Title 28 numbering.

§ 6321] "creates no property rights but merely attaches consequences, federally defined, to rights created under state law...." ... However, once the tax lien has attached to the taxpayer's state-created interests, we enter the province of federal law, which we have consistently held determines the priority of competing liens asserted against the taxpayer's "property" or "rights to property." ... The application of state law in ascertaining the taxpayer's property rights and of federal law in reconciling the claims of competing lienors is based both upon logic and sound legal principles. This approach strikes a proper balance between the legitimate and traditional interest which the State has in creating and defining the property interest of its citizens, and the necessity for a uniform administration of the federal revenue statutes.

Thus state law not only creates but also defines the nature of the property interest.

Second, of course, state law characterizations of property rights are not necessarily determinative of their federal tax consequences. But again the United States tries to make too much of that proposition by calling upon *United States v. Rodgers*, 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). In fact *Rodgers, id.* at 683, 690–91, 103 S.Ct. at 2137, 2140–41 (emphasis added, citations and footnote omitted) really reinforces *Aquilino* in the sense relevant to this case:

> Moreover, it has long been an axiom of our tax collection scheme that, *although the definition of underlying property interests is left to state law*, the consequences that attach to those interests is a matter left to federal law.

\* \* \* \* \* \*

We agree with the Court of Appeals that the Government's lien under § 6321 cannot extend beyond the property interests held by the delinquent taxpayer.

■ Despite the United States' contentions to the contrary, then, what remains is still the proposition that state law not only *creates* but also *defines* a taxpayer's property interests. Once those interests are so defined, federal law (IRC § 6321) teaches that the United States' tax lien attaches, and federal law then defines the United States' *remedies.*

■ That analysis cuts away entirely the United States' position as a defendant to this action. Illinois land trusts are an imaginative creation of nineteenth and early twentieth century Illinois practitioners, abetted by the Illinois courts, to develop a useful titleholding vehicle while still avoiding the impact of the Statute of Uses.[3] From the beginning the land trust's conceptual underpinning has been that the beneficiary has neither legal nor equitable title to the real estate. Instead the beneficiary's interest is a special kind of personal property: the right to the earnings, avails and proceeds of the real estate. Nor is the nature of that interest changed by the beneficiary's power of direction to the trustee to deal with the title—a power created by the unrecorded trust agreement, not by the recorded deed in trust (the so-called "full power deed in trust," which vests in the trustee full and unfettered power to deal with the real estate in all respects so far as third parties are concerned). See generally the discussions in *Chicago Federal Savings and Loan Association v. Cacciatore*, 25 Ill.2d 535, 185 N.E.2d 670 (1962) and *People v. Chicago Title and Trust Co.*, 75 Ill.2d 479, 27 Ill.Dec. 476, 389 N.E.2d 540 (1979).[4]

**3.** In that respect, the key holding was that of the Illinois Supreme Court that the trustee's duty to reconvey title after 20 years took the trust out of the so-called "dry trust" category deemed executed by the Statute of Uses. It was not until many years later that the operation of the federal income tax laws, under which the land trust conferred the opportunity for an individual's use of tax-sheltered income coupled with the avoidance of double taxation (which would

have resulted from the corporate ownership of real estate), converted what had been merely a useful vehicle into an enormously valuable one.

**4.** From the very inception of this Court's formative years in the law practice, it spent a great deal of time working with land trusts—and devoted a fair block of that time to writing and lecturing on land trust subjects. There has been no more change in the substantive law of land

■ Those concepts and the ones stated earlier in this opinion interact to compel two interrelated answers in Section 2410(a) terms. First, because the United States' tax deficiency runs against Horstings alone and because Horstings' "property" involves no interest in the real estate, this is not an action "to foreclose a mortgage ... upon ... real ... property on which the United States has or claims a ... lien." And second, because the United States' lien must attach (if at all) to Horstings' beneficial interest—that is, to personal property—and because this action is a real estate mortgage foreclosure suit, this is not an action "to foreclose a mortgage or other lien upon ... personal property on which the United States has or claims a ... lien."

Rev.Rul. 77–459, on which the United States seeks in part to rely to urge a different result, does not alter matters in the least. What that Revenue Ruling says essentially is that federal law, in the form of Internal Revenue Code provisions, can define "real estate" differently than does state law. Congress is of course free to adopt its own definitions, just as under patent law the patentee is said to be his, her or its own lexicographer. But IRC § 6321 does not purport to define the taxpayers' "property." Instead it simply attaches a tax lien to whatever that "property" may be, leaving it to state law to give that term substantive content, to furnish the definition.

As United States Mem. 5–6 candidly concedes, *Cacciatore* is a square holding on the nature of the land trust beneficiary's property interest—and on the United States' tax lien position as well—in exactly the same context in which the issue is posed here. Though the United States urges *Cacciatore* has been overtaken by

three later cases,[5] a review of those cases belies that claim.

First, this Court's former colleague Judge John Powers Crowley did uphold the right of a land trust beneficiary to redeem from a tax lien foreclosure in *DiFoggio v. United States*, 484 F.Supp. 233 (N.D.Ill. 1979), *aff'd mem. sub nom. DiFoggio v. DeLisa*, 618 F.2d 111 (7th Cir.1980). But *DiFoggio* found that redemption right existed under a statute (IRC § 6337(b)) that granted such rights to any "person interested in the property or ... acting on behalf of the owner." Indeed, the Illinois courts—without in any way purporting to alter the nature of a land trust beneficiary's property interest—had recognized an identical redemption right under the provision of the 1870 Illinois Constitution that allowed redemption by "owners and persons interested in ... real estate." *In re Application of County Treasurer of DuPage County*, 16 Ill.App.3d 385, 306 N.E.2d 743 (2d Dist.1973).[6] Thus nothing in *DiFoggio* (or *County Treasurer*, for that matter) purported to define (or redefine) the nature of the "property" owned by the land trust beneficiary (the relevant question under IRC § 6321) in any way inconsistent with the definition formulated by earlier Illinois cases and set out in this opinion. Hence neither of those cases helps the United States.

Second, *In re Gladstone Glen*, 628 F.2d 1015 (7th Cir.1980) is wholly comparable to Rev.Rul. 77–459. There the question was one of interpreting the manner in which Congress had defined persons entitled to invoke Chapter XII bankruptcy proceedings—and the construction of that federal statute is, of course, unquestionably a matter of federal and not state law. What our Court of Appeals did in *Gladstone Glen*

---

trusts since that period than had occurred between the time of origination of the land trust concept and the beginning of this Court's law practice.

**5.** *Cacciatore* (or later Illinois case law) is necessarily dispositive of any issues in the sphere marked out for state law by this opinion. Although *Cacciatore* cannot similarly control in the federal-law area, its reasoning does have

persuasive force, in light of the clear understanding of the issues displayed by that opinion.

**6.** *County Treasurer, id.* at 390, 306 N.E.2d at 748 squarely reconfirmed the nature of the beneficiary's property interest as described in this opinion, while at the same time setting a much lower threshold of "interest" to allow redemption.

was to define the phrase "equitable owner of real property" (as used in Bankruptcy Act § 406(6)) in practical terms—bearing in mind the purpose of Chapter XII to grant relief to debtors—and not in terms of the Illinois law of land trusts. Thus "owner" for Bankruptcy Act purposes was a term as to which Congress, with the assistance of the Court of Appeals, was indeed its own lexicographer. Once again the result does not alter the analysis here.

Finally, *Chicago Title and Trust* defined the term "owner" in the context of the Illinois statute specifying the "owner" as the party liable for real estate taxes, Ill. Rev.Stat. ch. 120, ¶ 508a. For that purpose the Illinois Supreme Court adopted a "common-sense definition of 'owner,'" embracing within that term the land trust beneficiary "because that beneficiary controls the purchase, sale, rental, management and all other aspects of land ownership" (75 Ill.2d at 492, 27 Ill.Dec. at 482, 389 N.E.2d at 546). But the Court did *not* purport to redefine the nature of the "property" owned by the beneficiary—instead that was specifically reconfirmed (*id.* at 488–89, 27 Ill.Dec. at 479–80, 389 N.E.2d at 543–44),[7] while solely for tax liability terms the Court defined the statutory word "owner" in terms of control.

In sum, nothing in the later case-law development has modified or affected the definition of Horstings' "property" or, therefore, the scope of the United States' lien. That however does not leave the United States without remedy. Its lien, encumbering the beneficial interest in the land trust (if that is in fact owned by Horstings), would attach to any foreclosure sale's earnings, avails and proceeds to which Horstings as beneficiaries would be entitled. And of course this Court does not pass upon whether any conduct by Horstings, or by anyone with whom they have dealt, might make Horstings (or any other potential claimant) vulnerable to a greater extent under IRC § 6321.

One question remains: the effect of Section 2410(a). As the sovereign, the United States both defines and limits the extent to which it may be sued. Except to the extent it has consented to suit, sovereign immunity shields it. Section 2410(a) confines that consent, in mortgage foreclosure cases, to situations in which the United States "has or claims a . . . lien on the property being foreclosed."

█ This Court has now held the United States "has" no lien on the property in foreclosure (the real estate). Jurisdiction here, upon removal of the case under Section 1444, had existed because the United States *claimed* a lien, but in the present circumstances such jurisdiction extended solely to deciding that question. With this Court's decision now having been rendered and having rejected the existence of the lien, jurisdiction no longer exists over the substantive dispute: The United States no longer "has or claims a . . . lien on the property being foreclosed."

Accordingly the United States is dismissed as a defendant, and this action is therefore remanded to the Circuit Court of Cook County as having been "removed improvidently and without jurisdiction" (Section 1447(c)). Under this District Court's General Rule 30(b), such a remand would be deferred for a period of 14 days unless this Court orders otherwise. Because the interests of all parties other than the United States in having the substantive issues decided would be disserved by letting the case lie dormant here for such a period, this Court also orders that the remand certificate issue immediately.

---

**7.** *Chicago Title, id.* both cited and discussed *Cacciatore* at some length, with obvious approval and reaffirmation of Cacciatore's treatment of the "property" concept relevant to the tax lien situation involved here.