**MUNICIPAL TRUST AND SAVINGS BANK, Plaintiff–Appellee,**

v.

**UNITED STATES of America, Intervenor–Appellant.**

No. 96–3055.

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1997.

Decided May 8, 1997.

Rehearing Denied June 27, 1997.

Marc A. Primack, John J. Blasi (argued), James W. McConkey, Rooks, Pitts & Poust, Chicago, IL, Thomas W. Murphy, Richard C. Perna, Johnson & Bell, Chicago, IL, Jerome C. Shapiro, Kankakee, IL, for Municipal Trust & Savings Bank.

Valerie K. Smith, Sacks, Albrecht, Copeland, Herzog & Sacks, Kankakee, IL, for Robert P. Geekie, Jr., Michelle Geekie.

Richard N. Cox, Office of the United States Attorney, Urbana Division, Urbana, IL, Regina S. Moriarty (argued), Bruce Ellisen, Department of Justice, Tax Division, Appellate Section, Barbara E. Seaman, Department of Justice, Tax Division, Washington, DC, for United States of America.

Before WOOD, Jr., COFFEY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Richard and Leah Unz died in 1977; their estate owes more than $800,000 in taxes. (For simplicity we refer to the "Unz estate" in the singular; a distinction between Leah's estate and Richard's becomes necessary later.) Richardson Bradshaw (Brad) Unz, their son and heir, managed to have some of the estate's property distributed to him without satisfying the estate's tax obligation. He resold that property. Now the United States wants to collect the taxes from a remote transferee.

Details of the transactions are not overly important, but some are essential. The Unz estate owned more than half of a partnership that owned the stock of Unz & Associates, Inc., which owned the beneficial interest in an Illinois land trust, whose asset was a parcel called Briarcliff Estates. It is helpful to think of an Illinois land trust as a closely held corporation in which the stockholder is also the manager. The trustee takes directions from the owner-manager and is more like a clerk than an ordinary trustee. Still, there is formal separation between ownership of the beneficial interest and ownership of the real estate, just as with a corporation. The Unz estate thus was the top tier in a holding company structure.

In order to raise cash, the estate sold its partnership interest in exchange for a land developer's promissory note, secured by the Briarcliff tract. When the developer did not pay, the estate filed suit; eventually the developer agreed to turn Briarcliff Estates over to Brad. Collectively, these transactions distributed the estate's property, leaving the tax debt unsatisfied. The deed to Brad recites that the transaction is "[s]ubject to ... federal estate and Illinois inheritance taxation, ... claims arising out of the Estate of Richard L. Unz and Leah N. Unz, Deceased, and subject also to a mortgage...." Without paying the estate taxes, Brad created a new land trust to hold Briarcliff Estates, which was then developed as a residential subdivision. One five-acre parcel was sold, at Brad's direction, to yet another land trust, of which Robert Geekie was beneficial owner. When Geekie failed to pay the debt he had incurred to buy this land, the lender (Municipal Trust & Savings Bank) foreclosed. Before the Bank could sell the parcel, however, the United States intervened and removed

the foreclosure action to federal court. It claims an interest superior to that of either Geekie or the Bank. Geekie has dropped out, but the Bank insists that its interest comes ahead of the tax collector's.

The district court gave summary judgment to the Bank, for three reasons: first, the Unz estate never owned Briarcliff Estates; second, state rather than federal law defines interests in property, see *United States v. National Bank of Commerce,* 472 U.S. 713, 722, 105 S.Ct. 2919, 2925, 86 L.Ed.2d 565 (1985); third, under state law the beneficial interest in an Illinois land trust is personal rather than real property, see *Chicago Federal Savings & Loan Ass'n v. Cacciatore,* 25 Ill.2d 535, 543, 185 N.E.2d 670, 674 (1962), just as shares of corporate stock are personal property even if the corporation owns land. All three observations are correct; they are also legally irrelevant.

■ A lien for taxes attaches to "all property and rights to property, whether real or personal, belonging to" the taxpayer. 26 U.S.C. § 6321. So the distinction between real and personal property is beside the point. National, not state, law determines what kind of property is available to satisfy taxes. *National Bank of Commerce,* 472 U.S. at 727, 105 S.Ct. at 2927–28. And although the statute refers to property "belonging to" the taxpayer, it was established long ago that the lien follows any property substituted for what the taxpayer owned, provided that the chain of substitution can be traced. *E.g., Sheppard v. Taylor,* 30 U.S. (5 Pet.) 675, 710, 8 L.Ed. 269 (1831), quoted with approval in *Phelps v. United States,* 421 U.S. ·330, 334–35, 95 S.Ct. 1728, 1731–32, 44 L.Ed.2d 201 (1975). The Unz estate owned a fractional interest in a partnership. This interest was replaced by a developer's long-term note. When the debtor did not pay, the note was exchanged for a promise to transfer Briarcliff Estates itself directly to Brad. Later transfers are simple to trace. According to the Bank, cases such as Sheppard and Phelps govern only when the taxpayer receives the substituted property, but why should this be so? The Unz estate had a right to collect from the debtor, with real estate as security; it exchanged the right to payment (or possession) for a conveyance directly to Brad as a means of distribution under the will. Exercise of a power of appointment is a common way of controlling wealth, and the holder of the power is treated in tax law as an owner. *E.g., Kurz v. CIR,* 68 F.3d 1027 (7th Cir.1995). Anything else would make it too easy to evade taxes (or tax liens).

■ The distinction between real and personal property would matter if what Brad received was, not Briarcliff Estates (the land), but the beneficial interest to the real estate trust that held Briarcliff Estates. For then the lien would arise in the beneficial interest rather than the land—just as the lien would have arisen in stock rather than land if Brad had received the stock of a corporation that owned Briarcliff Estates. See *Old Orchard Bank & Trust Co. v. Rodriguez,* 654 F.Supp. 108, 110–11 (N.D.Ill.1987). Although the Bank disputes the authenticity of the deed to which we have referred, we must take the evidence in the light most favorable to the United States, the party opposing summary judgment. Seen in that light, the evidence reveals that Brad received land, not an interest in a land trust. The tax lien attached to the land at that moment, stuck to it through later transfers, *United States v. Rodgers,* 461 U.S. 677, 691 n. 16, 103 S.Ct. 2132, 2141 n. 16, 76 L.Ed.2d 236 (1983); *United States v. Bess,* 357 U.S. 51, 57, 78 S.Ct. 1054, 1058, 2 L.Ed.2d 1135 (1958), and is senior to the Bank's interest. (The Bank does not argue that even a purchase-money lender comes ahead of a prior tax lien.) Perhaps more evidence will tell a different tale about the nature of the transfer to Brad, but if the deed is genuine the tax collector wins. Equitable concerns are neither here nor there under § 6321, but we add, for what little it is worth, that if the deed is real (and was recorded), the Bank could have protected itself. A search through the chain of title to the five-acre parcel would have turned up the deed conveying Briarcliff Estates to Brad, and that deed revealed the connection to the Unz estate, and the tax lien. Whatever problems would have been created by a transfer that

left no notice in the real estate records need not detain us.*

To enforce a lien against innocent purchasers such as the Bank, the United States must file a notice in the appropriate public office. 26 U.S.C. § 6323(a), (f). Notices of lien last at most 10 years, unless renewed, 26 U.S.C. § 6323(g)(3), and at the time of the events in this case the maximum was 6 years. The long lapse of time between the Unzs' deaths (1977) and the assertion of the lien against the Geekie parcel (1996) creates a substantial problem. The United States concedes that it did not properly renew its notice of lien concerning Leah Unz's estate; the Bank insists that the notice of lien against Richard Unz's estate also lapsed—indeed, that the lien was released.

█ Taxes were assessed against Richard's estate in 1979 and 1981. On September 13, 1985, the United States filed a notice of lien on Treasury Form 668(Y). A notice was timely refiled on August 26, 1988, and again on October 19, 1990. If this last notice was effective, it provides the United States with priority over a purchaser during the next 6 years; the Bank's interest arose in 1994, within this period. But the 1985 notice was quirky. It recited the filing date and its 6–year effective period. To make things extra clear for readers, a notice of tax lien also contains the "last date for refiling," which ought to be the filing date plus 6 years (now 10). But in this box appears "March 21, 1985"—exactly six years and 30 days after the estate tax was first *assessed*. This was the outer limit for an initial filing under the earlier version of § 6323(g)(3)(A), and the delay between March 21 and September 13 meant that any purchaser of the estate's assets during that window would have taken ahead of the United States; the date had nothing to do with the last date on which to

*re*-file a later-filed notice of lien. Yet there it was, and the date in the "last date for refiling" box can assume great significance: Form 668(Y) is "self-releasing." That is to say, the form prescribes that the lien is released on the last date for refiling, unless before that date a new notice of lien is filed, and Form 668(Y) acts as a "certificate of release" after the magic date. See *Griswold v. United States*, 59 F.3d 1571, 1579 n. 18 (11th Cir.1995); 26 U.S.C. § 6325(f)(1)(A). A release may be revoked by filing a notice in the same place the lien itself is filed, § 6325(f)(2), but the United States has not filed a notice of revocation.

█ Was the lien released on March 21, 1985? The Form 668(Y) says so. But it is a self-contradictory document. How can a notice of lien be re-filed six months before its initial filing? "Plain language" arguments are unsatisfactory when the text—the document's full text, not just an isolated phrase or date—is incoherent. One part of an internally contradictory document is not entitled to priority over another; the whole thing is Jabberwocky. By filing the notice in September 1985, the United States laid claim to a lien. The refilings in 1988 and 1990 show that it believed the lien outstanding. Perhaps someone who saw the notice of September 1985, read it part way, and relied on the entry in the "last date for refiling" box would have an argument for protection from the tax lien. But the Bank tells us that it never saw the deed to Brad, and therefore never traced Briarcliff Estates back to the Unz estate. It did not search the records for tax liens and did not see the notice of 1985, let alone the notices of 1988 and 1990. It was not confused. A purchaser for value between 1985 and 1988, when the refiling made clear the tax collector's continuing claim, also might have an argument. But we do not think that

---

* Consider this transaction, which would give lenders fits: Estate owns Blackacre and owes taxes. Estate transfers Blackacre to Stranger, in exchange for Stranger's promise to convey Whiteacre to Heir. Heir then develops Whiteacre, and Lender finances the construction of a house on one plot carved out of the parcel. Lender's title search shows that Heir and Stranger were Whiteacre's prior owners, but this knowledge provides no reason to investigate the tax problems of Estate, for it does not show any connec-

tion between Whiteacre and Estate. Blackacre's chain of title will reveal the connection to Estate, and therefore allow a lender to protect itself. Perhaps in such a case the tax lien follows Blackacre rather than Whiteacre. But here the deed to Briarcliff proclaims the connection to the Unz estate, which indirectly owned Briarcliff at the outset. If the tax lien does not follow the subdivision of Briarcliff, then the tax collector's interest has been defeated.

the Bank, which acquired its interest after the 1990 filing, and without any possible claim of detrimental reliance, can avoid the tax lien on the theory that it was released in 1985.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.