INRYCO, INC., Plaintiff-Appellee, v. MULTULOC CORPORATION, Defendant-Appellant.

First District (3rd Division)    No. 1—88—2780

Opinion filed August 22, 1990.

Walter E. Trittipo, of Chicago, for appellant.

Carrie A. Durkin and Keith J. Shuttleworth, both of Chicago, for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Defendant Multuloc Corporation (Multuloc) appeals from an order of the circuit court of Cook County which denied its motion for summary judgment and granted plaintiff Inryco, Inc.'s (Inryco's) motion for summary judgment. We reverse and remand for trial.

Inryco, a manufacturer and supplier of flooring and roofing products, brought suit against Multuloc, a floor and roof deck subcontractor, to recover damages for the balance of the contract price for roof decking materials it provided to Multuloc for its use during the 1981 construction of the Continental Baking Company bakery (Continental) in Hodgkins, Illinois. The balance allegedly owed by Multuloc was withheld after Continental refused to pay Multuloc the same amount when it discovered that the interior roof of the building did not comply with its specifications. As a result, Continental had to pay for corrective painting of the interior roof. The cost of the painting was the payment amount which Continental withheld from Multuloc and the amount of Multuloc's setoff against Inryco.

The negotiations on the project began when Multuloc submitted a written proposal to Continental on April 22, 1981. The proposal called for Multuloc to construct a two-part cellular roof deck having a G-60 galvanized coating. The G-60 description is an ASTM industry standard specification for a galvanized coating having sixty one-hun-

dredths of an inch of galvanizing material per square foot of surface area. Continental accepted the proposal and authorized Multuloc to construct the building. On May 8, 1981, Multuloc sent a material purchase order to Inryco. The purchase order contained, *inter alia*, the following requests, "approx. 1356 sqs. of Inryco 1-5/s NF 20/20 Galv. (G60) Roof Deck." In his affidavit, Kenneth R. Grearson (Grearson), president of Multuloc, stated that he received a written acknowledgement of his order on May 14, 1981. The acknowledgement letter informed Grearson that a complete and final bill of material should be sent to Inryco on or before July 13, 1981, in order to maintain the desired production schedule.

On July 10, 1981, Grearson telephoned Inryco to provide the necessary information to complete the bill of material. The information was taken via telephone by Inryco's customer service representative. The customer service representative transcribed the order specifications onto a bill of material form. On or about July 15, 1981, Inryco sent Multuloc a copy of the final and complete bill of material. That bill of material contained a product description which called for roof deck material with a G-60 coating on the top and an A-40 coating on the bottom. The coating specifications were written in the language of Inryco's internal code classifications and not in ASTM standard language. In his affidavit, Grearson indicated that he did not alter his original G-60 coating specification when he provided the information for the bill of material by telephone. Grearson further indicated that when he received a copy of the bill of material, he did not review the product coating specifications because he was unfamiliar with Inryco's internal code classifications. Grearson stated that he focused his attention on the "cutting list," which detailed the lengths and numbers of pieces to be cut by the mill for shipment to the jobsite.

Inryco fabricated the ordered material in accordance with the bill of material. From August 8, 1981, to August 22, 1981, Inryco shipped the materials to Multuloc's work site. Inryco also sent 15 individual notices of shipment to Multuloc. The notices contained Inryco internal code classifications for a deck product with a G-60 coating on the top and an A-40 coating on the bottom. Grearson acknowledged receipt of the notices, but stated that he never reviewed the product specifications for accuracy. The roof deck product was stored at the jobsite on pallets in the bundles shipped from the Inryco factory. Because the product was stored with the underside down, no one at Multuloc examined the underside of the product.

The roof deck product remained bundled until erection of the

structure began on September 19, 1981. According to Multuloc, it was its practice and the practice of other roof deck subcontractors operating in the Chicago market at the time of the performance of this subcontract not to make detailed inspections either of the numbers and lengths of pieces or of the conformity of the various galvanized coatings to contract specifications at the time of delivery but, rather, to wait until the materials were lifted by crane to the location where they were to be used. On or about September 23, 1981, Grearson was informed by Continental that the underside of the partially constructed roof was badly streaked. Continental informed Grearson that it would not accept the installed galvanized deck product in that condition because it was not the product specified in their contract.

In response to Continental's complaint, Grearson obtained a sample of the product and took it to Inryco's Melrose Park office on September 23, 1981, to inquire if the underside of the product had a G-60 surface. Inryco tested the product and on October 7, 1981, informed Multuloc that the underside of the product had an A-40 surface. When Continental was informed that the underside of the deck product surface was A-40 instead of G-60, it informed Multuloc that the A-40 finish was unacceptable and that field painting would be performed at Multuloc's expense. Continental refused to consent to removal of the objectionable product or wait for delivery of a new order. Bids were solicited for the roof painting, and the low bid price was $27,667. Continental deducted the price of the paint job from its payment to Multuloc. Thereafter, Multuloc requested, but was refused reimbursement from Inryco for the cost of the painting. As a result, Multuloc deducted the cost of painting from the payment due Inryco for the deck materials. This lawsuit followed.

On appeal, Multuloc contends that the trial court erred in granting Inryco's motion for summary judgment and in denying its motion for summary judgment. Alternatively, Multuloc contends that because material issues of fact exist, summary judgment for either party was inappropriate. We agree with Multuloc's latter contention.

■■ ■ Summary judgment is appropriate if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (*Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 273, 533 N.E.2d 75, 78; Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) The aim of summary judgment is not to try issues but to determine whether any triable issues exist. (*Staton v. Amax Coal Co.* (1984), 122 Ill. App. 3d 631, 633, 461 N.E.2d 612, 614.) Evidence in support of the motion

must be strictly construed against the moving party, and summary judgment should be denied where reasonable persons could arrive at different conclusions. (*Petkus v. Girzadas* (1988), 177 Ill. App. 3d 323, 327, 532 N.E.2d 333, 336.) An order granting summary judgment must be reversed if a reviewing court determines that an issue of material fact exists. *Arnold v. Village of Chicago Ridge* (1989), 181 Ill. App. 3d 778, 785, 537 N.E.2d 823, 827.

■ In the present case, there are several genuine issues of material fact which preclude summary judgment for either party. Following the hearing on the motion for summary judgment, the trial court made the following conclusions of law: (1) the evidence shows that there was an agreement between the parties based on the writings and conduct of the parties in their totality; (2) Multuloc had a duty to know its own obligations to the owner; (3) Multuloc ordered the product that it received and accepted; (4) Multuloc had a duty to inspect the product upon delivery. The bill of material, shipping notices, and the length of time the product was in Multuloc's possession provided Multuloc with adequate opportunities to inspect the product for the alleged defect; (5) Multuloc did not provide timely notice to Inryco of any alleged defect in the product; and (6) Multuloc made no effective revocation of the product accepted.

Contrary to the court's conclusions, several disputed factual issues exist. First, the terms of the contract are in dispute. Inryco contends that Multuloc ordered a roof deck product with a G-60 surface on the top and an A-40 surface on the bottom. Inryco states that its position is supported by the bill of material and shipping notices which designate, in their internal language, that particular product specification. Multuloc responds that it did not at any time request an A-40 surface on the underside of the roof product and that it was unfamiliar with Inryco's internal product specification language. Its position is supported by the purchase order form which contains a G-60 coating specification.

Second, the parties disagree as to whether the bill of material was either a modification or a material alteration of the parties' prior agreement as specified in the purchase order. Multuloc contends that the Illinois Uniform Commercial Code provision which provides that a written confirmation delivered within a reasonable time operates as an acceptance, unless the terms materially alter the agreement, governs the transaction. (See Ill. Rev. Stat. 1987, ch. 26, par. 2—207.) It is Multuloc's position that Inryco's bill of material materially altered the parties' previous agreement. Inryco responds that even if Multuloc's purchase order could have constituted an

agreement between the parties, it was clearly modified by the subsequently prepared bill of material, which complied with the Illinois Uniform Commercial Code modification provisions which provide that written modifications between merchants need not be signed. (Ill. Rev. Stat. 1987, ch. 26, par. 2—209(3).) Inryco further contends that Multuloc's failure to timely object to the contract modifications resulted in acceptance of the terms. In short, the parties disagree about whether or not their original agreement was modified or materially altered.

Third, the parties disagree on the issue of timely objection. Inryco contends and the trial court agreed that Multuloc did not timely object to the alleged defects in the roof deck product. Multuloc counters that timeliness under section 2—607(3)(a) (Ill. Rev. Stat. 1987, ch. 26, par. 2—607(3)(a)) is for the trier of fact to decide. We agree with Multuloc that the timeliness of an objection to allegedly defective goods is a factual issue to be determined on the basis of the nature of the goods involved and the custom and practice of the trade. See *S.M. Wilson & Co. v. Reeves Red-E-Mix Concrete* (1976), 39 Ill. App. 3d 353, 357, 350 N.E.2d 321, 325.

In sum, there are numerous material issues of fact which preclude summary judgment for either party in this matter. We believe that fair-minded persons could draw different inferences from the facts and that therefore one or more triable issues exist. Because the trial court could not have reached a decision without resolving these factual issues, summary judgment was inappropriate in this case.

Accordingly, the judgment of the circuit court of Cook County is reversed, and this cause is remanded for trial.

Reversed and remanded.

CERDA, P.J., and FREEMAN, J., concur.