PARKWAY BANK AND TRUST COMPANY, as Trustee, *et al.*, Plaintiffs-Appellants, v. ELMER F. GLEICH, Defendant-Appellee.

First District (2nd Division)   No. 1—88—1747

Opinion filed April 30, 1991.

Michael A. Braun, of Braun & Rivkin, Ltd., of Chicago, for appellants.

James S. Gordon and Edward Slovick, both of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiffs brought this action seeking damages from defendant for breach of a contract to purchase certain property held in a land trust. They appeal from an order of the circuit court granting summary judgment to defendant.

Plaintiff Charles P. Burtell was the sole general partner of Algonquin 33 Investment, an Illinois limited partnership, which was the beneficiary of two Illinois land trusts, Nos. 4297 and 4298, of which

plaintiff Parkway Bank and Trust Company (Parkway) was the trustee. The trusts contained 72 parcels of vacant land, which were the subject of the contract in dispute in this case; trust No. 4298 contained only a small portion of three of those lots. Pursuant to the provisions of the trust agreement, "Charles P. Burtell, General Partner" had the sole power to direct the trustee to sell or otherwise deal with the property.

During May or June of 1980, defendant Elmer F. Gleich, through Carl Kristensen, a real estate broker, began negotiating for the purchase of the property with Eugene Purcell, Burtell's agent and employee. The parties agreed on the essential terms of the transaction and on July 12, 1980, reduced them to writing in a commonly used real estate contract form produced by Kristensen. That same day Gleich signed the contract, executed a check for $20,000 made payable to Kristensen as earnest money, and gave both the contract and the check to Kristensen. Parkway, as trustee, was designated as the seller in the contract.

On July 13, 1980, Kristensen prepared a rider to the contract at Gleich's request, permitting Gleich to use certain black dirt located on the property. Kristensen signed the rider on behalf of and at the request of Gleich and forwarded both the original signed contract and rider to Purcell.

On or about July 17, 1980, Burtell signed the contract and rider. Next to the printed word "Seller" in that portion of the instrument provided for signatures there is typewritten: "Parkway Bank and Trust Company Trust No. 4297" and, on the next line, "Beneficiary:" followed by Burtell's signature. Two days later, the signed contract and rider were delivered to Gleich, who according to plaintiffs' complaint, authorized Kristensen to open the escrow required by the contract to hold his earnest money deposit. Defendant disputes that he authorized the deposit, relying on Kristensen's affidavit, in which Kristensen states that he deposited the $20,000 in his trust account "without the direction of any party including Elmer Gleich." Nevertheless, Gleich does not appear to have objected to the deposit.

The closing of the first stage of the transaction was scheduled to occur on August 15, 1980. Burtell, exercising his power of direction, caused all of the necessary documents to be prepared and executed by Parkway, including its trustee's deed to 16 lots which Gleich had designated as the first "take-out" group. Burtell also ordered and caused to be delivered to Gleich a commitment for title insurance dated July 31, 1980, covering the 16 lots. Plaintiffs allege that after receiving the title commitment, Gleich told Kristensen to change the name of

the proposed insured from himself to Gleich Construction Company, which Burtell's attorney did.

According to Kristensen, shortly before the closing, Gleich suffered a mild heart attack, after which he called Kristensen and told him: "I cannot go ahead with the property. You can keep the $20,000." The record is not clear as to whether this information was communicated to Burtell. At any rate, on August 15, 1980, Burtell and his attorney attended the closing, but neither Gleich nor his representative appeared. Soon thereafter, Gleich sent Parkway a letter, "Attention: Charles Burtell," dated August 13, 1980, stating that he "wish[ed] to terminate this contract." Later, Burtell received a second letter from Gleich, prepared by his attorney, declaring that there had never been a contract in the first place "because of failure by Parkway Bank and Trust Company to properly execute and deliver a duplicate original of the Real Estate Sale Contract to me."

On August 28, 1980, plaintiff filed a complaint against Gleich seeking specific performance and damages for material breach and anticipatory repudiation of the contract. In the long course of this litigation, plaintiffs filed an original and three amended complaints, eventually abandoning their allegation of anticipatory breach and prayer for specific performance and adding an alternative theory of "ratification." Count I of the third amended complaint, filed June 2, 1988, was based on material breach of contract. Count II alleged that even if Burtell as beneficiary could not accept Gleich's offer to purchase the property from the trustee, once it was signed by Burtell and delivered to Gleich, Gleich "ratified" the contract by his actions and deeds which were consistent with the existence of a binding contract.

Each of the parties ultimately filed cross-motions for summary judgment. After hearing lengthy argument and considering a vast amount of documentary evidence, Judge Lester Foreman denied both parties their motions; and after hearing further argument and reviewing the record, Judge Thomas Hoffman also denied plaintiffs' amended motion for summary judgment. The judges' main concern in both proceedings was held to be the existence of an outstanding issue of fact: whether by their conduct the parties intended to enter into a binding contract.

On June 3, 1988, after the case was set for trial, Gleich filed a motion for summary judgment based on plaintiffs' third amended complaint which had been filed only the previous day. The court heard the parties' extensive arguments on the same day. Gleich contended that no contract came into existence for the reason that (1) Burtell as beneficiary had no power to accept Gleich's offer to buy the property

because the legal titleholder and designated seller in the offer was the trustee, Parkway; (2) even if the beneficiary could sell the property, Burtell could not, because the beneficiary of the trust was a limited partnership, and Burtell signed the offer in his individual capacity rather than in his capacity as general partner; (3) as to the issue of ratification, Gleich argued that the contract was void and thus incapable of being ratified; (4) furthermore, to the extent that Burtell's signature constituted a counteroffer, Gleich did not sign or initial it; therefore, the purported transaction did not comply with the Statute of Frauds.

Plaintiffs argued that the parties entered into a binding contract because (1) Burtell as beneficiary with the sole power to direct the trustee to sell was ready, willing and able to cause title to the property to be conveyed, *i.e.*, to perform the seller's obligation under the contract; thus, his signature was sufficient to create a binding agreement; (2) Burtell had the authority to bind the partnership to the agreement because he possessed the sole power of direction both as general partner and in his own name and because he actually exercised this power in accordance with Gleich's request in connection with the latter's designation of the first 16 of the lots to be conveyed; (3) the "substantial" negotiations between Burtell's agent and Kristensen, acting on behalf of Gleich, showed Gleich's willingness to deal with Burtell, rather than with the trustee; (4) the negotiations dealt with substantive matters under the proposed agreement rather than the method of conveying title; and (5) Gleich acted consistent with the existence of a contract when he designated the lots for the first "take-out," a buyer's right, and changed the grantee's name on the commitment for title insurance from "Gleich" to "Gleich Construction Company," all of which occurred after Burtell had signed the contract and had it returned to Gleich.

Judge Paul Elward granted summary judgment in favor of Gleich, stating:

> "THE COURT: There was no contract. There was a material alteration. There was a counteroffer. It was not accepted.
>
> MR. BRAUN: You ground [sic] that Mr. Gleich did not accept it by work [sic], deed or otherwise?
>
> THE COURT: That's correct, sir. That's a fair statement and you're entitled to have it."

■ While in a conventional trust the trustee holds the legal title and the beneficial owner holds the equitable title, in an Illinois land trust, both legal and equitable title rest in the trustee, and the beneficiary retains only a personal property interest. *Paine/Wetzel Associ-*

*ates, Inc. v. Gitles* (1988), 174 Ill. App. 3d 389, 393; *First National Bank of Barrington, Trust No. 11-1317 v. Oldenburg* (1981), 101 Ill. App. 3d 283, 286-87.

■ "In contrast to a conventional trust, however, the Illinois land trust gives the beneficiary full and complete control over the management, use, and disposition of the property, just as if he had legal title." (Haswell & Levine, *The Illinois Land Trust: A Fictional Best Seller*, 33 De Paul L. Rev. 277, 278; see also *Fried v. Barad* (1988), 175 Ill. App. 3d 382; *Southeast Village Associates v. Health Management Associates, Inc.* (1981), 92 Ill. App. 3d 810, 812.) During the life of the land trust, the trustee can act only upon the direction of the beneficiary. (*Robinson v. Chicago National Bank* (1961), 32 Ill. App. 2d 55, 58.) The trustee's role is thus reduced to that of a nominee or bare titleholder. Moreover, it is undisputed that the trustee does not clear title if necessary to make it merchantable; that, in fact, it performs none of the contractual undertakings of the seller; and that it universally inserts a disclaimer of any liability on its part whenever it signs any document relating to the trust and which the holder of the power of direction orders it to sign.

The unique arrangement between the trustee and the beneficiary is created through the use of two instruments. The deed in trust, which conveys the legal title of the realty to the trustee, is filed for record as evidence of the trustee's title to the property. It does not identify the beneficiary or describe the terms of the trust. The trust agreement, executed contemporaneously with the deed in trust, outlines the right of the beneficiary to retain absolute control over the property through the power of direction over the trustee and his rights to possess, control, manage, and receive all proceeds from the property. The trust agreement is not recorded and is normally kept secret from the public. Haswell & Levine, 33 De Paul L. Rev. at 279.

Plaintiffs request us to reverse the trial court's decision to grant summary judgment to defendant, contending that certain triable issues of fact remain outstanding. Gleich maintains, however, that the outcome of this case is controlled by *Schneider v. Pioneer Trust & Savings Bank* (1960), 26 Ill. App. 2d 463. Declining "to expand the term 'offeree' to include anyone who had the power to bring about the result contemplated in the offer," *Schneider*, after a trial on stipulated facts, held that the beneficiary of an Illinois land trust with the sole power of direction may not accept an offer to purchase addressed to the trustee, because "[t]he offeror has the right to choose the person with whom he deals," and that "[t]o constitute a contract by offer and acceptance, the acceptance must conform exactly to the offer."

(26 Ill. App. 2d at 465-66.) There the beneficiary accepted the offer as the "owner, by written notation thereon." (26 Ill. App. 2d at 465.) The court reasoned that a beneficiary who wishes to reap the benefits of an Illinois land trust must observe "the form of the trustee's ownership." 26 Ill. App. 2d at 466.

Several cases decided after *Schneider* have, however, steadily eroded its prodigally stated doctrine. For example, in *Madigan v. Buehr* (1970), 125 Ill. App. 2d 8, 260 N.E.2d 431, the court held that the beneficiary of a land trust could not enforce a contract if she attempted to enter the contract as an outright owner of the property, but could do so if she disclosed her status as a beneficiary, because of her absolute authority to direct the trustee to dispose of the property. Similarly, *Lampinen v. Hicks* (1979), 73 Ill. App. 3d 376, *Jacobs v. Carroll* (1977), 46 Ill. App. 3d 74, and *House of Realty, Inc. v. Ziff* (1972), 9 Ill. App. 3d 419, held that as long as the beneficiary does not attempt to pass himself off as the legal titleholder in the transaction, he has the power to contract.

In *Oldenburg*, as in this case, the seller designated in the contract was the trustee, and the following appeared in the space provided for the signature of the seller: "Trust No. 11-1317 First National Bank of Barrington, Byron N. Cohen, agent for L. G. Langpop, beneficiary." Langpop was one of three beneficiaries of the trust, and he shared the power of direction with one of the other beneficiaries. Thereafter, because the purchasers were being transferred out of the area, they sought to cancel the agreement and recover their earnest money deposit. To that end they entered into negotiations with Langpop's agent, Cohen, and when they could not reach a settlement, Cohen, an attorney, filed suit in behalf of the trustee against the purchasers. The trial court, although reluctant to do so, felt bound to follow *Schneider*, and entered summary judgment in favor of the defendants, holding that the contract was invalid and unenforceable. The appellate court, concluding that "*Schneider* does not control the facts at hand," reversed. After addressing "the basic nature and substance of an Illinois land trust agreement and the powers accorded a beneficiary of such trust," the court continued: "[a]lthough it has been stated that the beneficiary of a land trust can neither contract to sell real estate nor accept an offer to purchase it [citations], it has also been observed that this broad declaration of the law does not find support in the cases cited as authority for the proposition [citation]. *** [A] beneficiary of a conventional land trust may enter into a valid contract to convey title to the trust property, when acting in his capacity as beneficiary, if the trust agreement vests in him the sole right to direct the

trustee to convey title. [Citing *Madigan*, 125 Ill. App. 2d 8, 260 N.E.2d 431, among other cases]." (*Oldenburg*, 101 Ill. App. 3d at 286-87.) "The mere listing in the contract of the trust, or trustee, as the offeree does not preclude this court from recognizing, *based on the conduct and dealings of the parties prior to and subsequent to the formation of the contract*, that the beneficiaries were the actual offerees." (Emphasis added.) *Oldenburg*, 101 Ill. App. 3d at 289.

In *Fried, Page v. Fosco* (1980), 90 Ill. App. 3d 1113, and *Rizakos v. Kekos* (1977), 56 Ill. App. 3d 404, the seller-beneficiary was estopped from avoiding the sale of real estate based on his voluntary nondisclosure of his beneficiary status. In *Farley v. Roosevelt* (1978), 67 Ill. App. 3d 700, the court held that by signing an option contract, the beneficiary *became obligated* to direct the trustee to convey the subject property and could not use its beneficiary status as an affirmative defense. In *Paine/Wetzel Associates, Inc. v. Gitles* (1988), 174 Ill. App. 3d 389, the court, in relying on *Madigan* and *Oldenburg*, held that as long as the trust agreement gives the beneficiary of an Illinois land trust the sole power of direction over the disposition of the trust *res*, the beneficiary can encumber the property with a lien. The beneficiary in *Paine/Wetzel* could not avoid foreclosure of the lien merely because he did not hold legal or equitable title to the subject property. While *Rizakos, Page, Farley*, and *Paine/Wetzel* required beneficiaries to perform at the suit of purchasers or lien holders, they have been held to be persuasive authority in support of the conclusion reached in *Oldenburg*. (*Oldenburg*, 101 Ill. App. 3d at 291.) Plaintiffs in the present case also argue plausibly that under the doctrine of mutuality of obligation, if Burtell was bound as a beneficiary, Gleich was equally bound.

Plaintiffs urge this court to decline to follow *Schneider* because it "pay[s] unwarranted homage to the form of the land trust without considering the reality of the substance of the sales transaction." Plaintiffs point to authority that a person may contract to sell land without having title at the time of the transaction because it is the promise to convey title at closing that is at the crux of the contract. (*Beilin v. Krenn & Dato, Inc.* (1932), 350 Ill. 284; *White v. Bates* (1908), 234 Ill. 276. See also *Fried:* " 'The object of courts of equity, as well as courts of law, is the enforcement of contracts rather than their evasion, and where a valid contract exists for a sale of land a court of equity will enforce it as a matter of right where it was fairly and understandingly entered into and no circumstances of oppression and fraud appear.' *In re Estate of Frayser* (1948), 401 Ill. 364, 371-72, 82 N.E.2d 633." *Fried*, 175 Ill. App. 3d at 390.) It is to be noted also

that "[e]very contract implies good faith and fair dealing between the parties to it." (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 286; *First National Bank v. Sylvester* (1990), 196 Ill. App. 3d 902, 910.) Gleich does not dispute that Burtell was able to tender a proper deed at closing; in fact, well before Gleich gave notice of termination, Burtell gave the trustee a written "Direction to Convey" the property to the grantee, which the trustee honored by properly executing the deed required by the contract.

It is often said that the offeror is the master of his offer; however, applied blindly and mechanically, this principle fails to accommodate the realities of dealing with the unique legal creature of the Illinois land trust. The principal objective of this manner of holding real property is the secrecy in which the *de facto* ownership and the power of direction are held; another advantage is the simpler method of transfer it affords, especially in the case of multiple beneficiaries. A host of other advantages the device offers are enumerated in Haswell & Levine, *The Illinois Land Trust: A Fictional Best Seller*, 33 De Paul L. Rev. 277, 285-87.

Contrary to the court's ruling in *Schneider*, to hold that the beneficiary of an Illinois land trust who possesses the right to direct the trustee to deal with the property has the power to accept an offer addressed to the trustee would conform the term "offeree" to the realities of the Illinois land trust arrangement, for the holder of the power of direction is indeed the only entity with "the power to bring about the result contemplated in the offer." (See *Schneider*, 26 Ill. App. 2d at 465.) Where the beneficiary is willing to forego the anonymity he enjoys by virtue of the terms of the trust agreement, there is no reason to prevent him from disposing of the trust *res*. Furthermore, to so hold would still preserve the legal structure of the trust, because the beneficiary would still be obligated by his signature to direct the trustee to convey title. See *Farley*, 67 Ill. App. 3d 700.

Indeed, by signing the contract in the instant case, Burtell bound himself by its very terms "to convey or *cause to be conveyed*" the subject property, a clause deemed to be of virtually insurmountable significance in *Oldenburg, House of Realty, Lampinen, Madigan, Rizakos*, and others. (Emphasis added.)

> "[I]t cannot be said that a beneficiary can never contract to sell the trust property. He may do so under appropriate circumstances, not because he has power to convey title or to execute a deed, or because he is the agent of the trustee or stands in its stead, but *because the trust agreement gives him 'control of the selling' and the right to direct the trustee to convey title to*

*whomever he designates. Since he has the power to designate conveyance he may contract to exercise that power. If the sales contract is one in which this power is explicitly exercised, or if it is one which, because of the disclosure of the trust and the beneficiary's status, can be construed as exercising this power, the contract is enforceable against both the beneficiary and the purchaser.* To permit the beneficiary to contract in this manner does not encroach upon the jurisdiction of the trustee nor its functions; it does not infringe upon the protection afforded a purchaser who deals with the trustee, nor does it expand the beneficiary's liability or change his status. His legal interest in the trust remains personal property; but *allowing him to climax negotiations for the sale of the real estate by agreeing to have it conveyed removes some of the make-believe which hovers over land trusts and permits a realistic approach to the disposition of trust property.*" (Emphasis added.) *Madigan,* 125 Ill. App. 2d at 16-17.

The above-quoted language from *Madigan* has been cited approvingly and relied upon, among other cases, in *Lampinen* (73 Ill. App. 3d at 378); *Jacobs* (46 Ill. App. 3d at 79-80); *Rizakos* (56 Ill. App. 3d 404); *Page* (90 Ill. App. 3d at 1115-16); *Oldenburg* (101 Ill. App. 3d at 289-90); and *House of Realty* (9 Ill. App. 3d at 421-22). In *House of Realty,* "the court held that the seller-beneficiary could enforce the contract because she had styled herself as beneficiary in the contract, thereby demonstrating to all concerned that she was not dealing with the property as the legal title holder, and, more importantly, because she had contracted expressly to 'cause title to be conveyed,' thereby obligating herself to effect a transfer of title." *Oldenburg,* 101 Ill. App. 3d at 291.

As noted earlier, two circuit court judges successively declined to award summary judgment to either side, each judge concluding that it remained to be decided by the trier of fact whether the parties, by their conduct, intended to enter into a binding contract. Thereafter, on the basis of purportedly new matter alleged to have been pleaded in the third amended complaint, a third judge, adhering strictly to *Schneider,* awarded summary judgment to Gleich. Although we are fully cognizant that our supreme court has held that one trial judge has the inherent power to modify or vacate an interlocutory order of another judge granting or denying summary judgment any time before final judgment absent evidence of bad faith or "forum-shopping" on the part of the moving party (*Rowe v. State Bank* (1988), 125 Ill. 2d 203, 213-14), we are of the opinion that whether or

not there was new matter presented to Judge Elward, his ruling that there was no genuine issue of material fact and that Gleich was entitled to summary judgment as a matter of law was palpably in error.

Summary judgment is appropriate only when the pleadings, depositions, affidavits, and admissions on file present no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005; *In re Estate of Olenick* (1990), 204 Ill. App. 3d 291, 297.) Accordingly, the purpose of a summary judgment proceeding is not to try issues of fact, but rather, to determine if such issues do in fact exist. (*Inryco, Inc. v. Multuloc Corp.* (1990), 202 Ill. App. 3d 367, 370.) Moreover, it is well established in our law that the pleadings, depositions, admissions, and affidavits in support of a motion for summary judgment are to be construed most strictly against the moving party and liberally in favor of the opponent. (*Pyne v. Witmer* (1989), 129 Ill. 2d 351, 358; *Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 398.) And because the summary judgment procedure is a drastic means of disposing of litigation, it should be allowed only when the right of the moving party is clear and free from doubt. *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

In attempting to distinguish *Schneider*, the *Oldenburg* court, dealing with a set of facts similar to the one that we encounter here, held, as we have noted earlier, that the beneficiary's power to bind the trust depended on the offeror's intent to deal with the beneficiary rather than with the trustee, and that, thus, the parties' "conduct and dealings" before and after the formation of the contract were relevant to the issue of intent. (*Oldenburg*, 101 Ill. App. 3d at 289.) Therefore, a trier of fact would be required to consider the myriad of factors that present themselves in this case in order to ascertain with whom Gleich intended to contract.

Without conceding the inapplicability of *Schneider*, defendant Gleich makes much of the fact that Burtell signed the contract "Beneficiary: Charles Burtell," and argues that, therefore, he did not bind the true beneficiary of the trust, a limited partnership. The partnership agreement of Algonquin 33 Investment, an Illinois limited partnership, designates Burtell as its sole general partner and states in article VIII thereof that:

> "The general partner shall have complete and exclusive control over the management of the Partnership business and affairs *** [and] shall have the right, power and authority, on behalf of the partnership *and in its name*, to exercise all of the rights, powers and authority of a Partner *** under the Illinois

Uniform Partnership Act, including, without limitation, the power and authority to do all of the following:

(a) To acquire, hold, sell lease or otherwise dispose of any real property *** at such price *** as the General Partner deems, in his absolute discretion, to be in the best interest of the Partnership." (Emphasis added.)

With respect to the conveyance of partnership real estate, section 10(2) of the Uniform Partnership Act provides as follows:

"(2) Where title to real property is in the name of the partnership, a conveyance executed by a partner, *in his own name*, passes the equitable interest of the partnership, provided the act is one within the authority of the partner under the provisions of paragraph (1) of Section 9." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 106½, par. 10(2).)

Section 9(1) of the Uniform Partnership Act states:

"Sec. 9. (1) Every partner is an agent of the partnership for the purpose of its business, and the act of every partner *** for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, *unless* the partner so acting has in fact no authority to act for the partnership in the particular matter, *and* the person with whom he is dealing has knowledge of the fact that he has no such authority." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 106½, par. 9(1).)

Hence, plaintiffs argue, pursuant to the partnership agreement, the Partnership Act, and the trust agreement in this case, Burtell, as sole general partner is the "functional equivalent" of the beneficiary. It is also noteworthy that in *Oldenburg* it was the *agent* of *one* of *three beneficiaries* who signed the contract and that the beneficiary in whose behalf he signed *shared the power of direction with one of the other beneficiaries*.

At any rate, as this court held in *Fried*, authority and agency are questions of fact as are questions of "whether one has notice of an agent's lack of authority or is put on notice by the circumstances." (*Fried*, 175 Ill. App. 3d at 388.) In the instant case, the record does not resolve the question of Burtell's authority to act on behalf of the limited partnership. The parties do not dispute that Burtell signed the land sale contract without appending the title "general partner" to his name. The record also reflects that Burtell signed the trust agreement as beneficiary in his own name without indicating "general partner," that he had the sole power of direction, and that the trustee, Parkway Bank, on August 4, 1980, well before Gleich wrote to the

Bank that he "wish[ed] to terminate this contract," executed the deed to the trust property to the grantee, Gleich Construction Company, in preparation for closing, pursuant to a written "Direction to Convey," signed by Burtell in his own name. In fact, the trustee appears invariably to have accepted his signature without specifying "general partner" whenever he exercised his power of direction, and that the parties to the trust regarded "general partner" as a mere designation, inessential to Burtell's signature. Further, Algonquin 33 Investment has not been heard to complain about Burtell's authority to sell the land. Indeed, as noted above, Gleich concedes that Burtell was able to tender a proper deed at closing. Therefore, on this issue alone, summary judgment was inappropriate.

Count II of plaintiffs' third amended complaint raises the question of whether Gleich "ratified" Burtell's acceptance of the offer. Perhaps a better view of the issue is whether Gleich waived strict compliance with the terms of the written offer and thereby accepted Burtell as the proper offeree. In *Swerdlow v. Mallin* (1985), 131 Ill. App. 3d 900, 904, the court held:

> "The parties to a contract can waive any provision in a contract and such waiver can be demonstrated by 'conduct indicating that strict compliance with the provisions of a contract will not be required.' "

Here, plaintiffs point to evidence that not only did Gleich negotiate with Burtell's agent through Kristensen, but that he also exercised his right to designate the first 16 lots for the closing scheduled for August 15, and directed Kristensen to pay the earnest money into his escrow account and to change the name of the grantee on the title commitment from "Gleich" to "Gleich Construction Company." There is also evidence to show that Gleich did not object to Burtell's signature on the contract when it was returned to him on July 19, 1980. In addition, according to Gleich, after he suffered his heart attack, he told Kristensen that he "would rather forfeit [the earnest money deposit] but the principals said no they weren't interested, that they'd sue for specific performance"; thereafter, Gleich sent a certified letter to the Bank, "Attention: Mr. Chas. Burtell," stating "I wish to terminate this contract."

Gleich counters with evidence of his own. He maintains that the lot designations occurred before he received the contract with Burtell's signature, placing in issue the credibility of Burtell's attorney, who stated in his affidavit that Gleich designated the lots *after* the contract was returned. Gleich also contends that he questioned Burtell's signing of the contract. He next points to Kristensen's affidavit,

in which he states that he deposited the earnest money in his escrow account "without the direction of any party including Elmer Gleich." Nevertheless, Gleich appears not to have objected, or to have taken steps, to prevent Kristensen's depositing Gleich's check.

Kristensen's relationship to the parties raises yet another question of fact: as a real estate broker, was he the agent of Gleich, the buyer, or Burtell, the seller? In the briefs, each party refers to him as the agent of the other, but neither recites any supporting facts, although it does appear that as the broker who had the listing, he also signed the rider to the contract relating to topsoil in Gleich's behalf. Then, too, as to several of these fact issues, Gleich's position in his depositions and affidavits seems not to have remained completely stationary during the long history and in the voluminous record in this case.

■■ Finally, Gleich argued before the trial court that because the subject property was encumbered by a trust deed secured by an assignment of the beneficial interest, the trustee's signature was indispensable to the validity of the contract. Only because the argument might be raised on remand, we point out that the contract in the case at bar, as is practically universal in real estate sales agreements, provides that "title exceptions pertaining to liens or encumbrances of a definite or ascertainable amount which may be removed by the payment of money at the time of closing and which the seller may so remove at that time by using the funds to be paid upon the delivery of the deed [are] permitted exceptions." Moreover, it is undisputed that the power of direction still remained solely in Burtell in the trust agreement. In any event, a proper deed of conveyance, as noted above, was prepared by Parkway and was ready for delivery to Gleich at the scheduled closing. It is noteworthy here too, that the assignment of the beneficial interest was signed by Burtell in his individual capacity without indicating "general partner." In sum, the case is replete with unresolved issues of both credibility and fact which demand a trial.

Accordingly, we hold the award of summary judgment to be inappropriate, and that the trial court's order granting defendant's motion should be reversed and the cause remanded to the trial court for further proceedings not inconsistent with the views expressed in this opinion. See *Purtill v. Hess* (1986), 111 Ill. 2d 229; *Bunch v. Williams* (1988), 175 Ill. App. 3d 582.

Reversed and remanded.

HARTMAN and DiVITO, JJ., concur.