In re **KRESS ROAD PARTNERSHIP,**
Debtor.

**KRESS ROAD PARTNERSHIP,**
Plaintiff.

v.

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF ELGIN, et al.**
Defendants.

**Bankruptcy Nos. B 05776, 90 A 0242.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

Sept. 25, 1991.

---

F. Dean Armstrong of F. Dean Armstrong, P.C., Flossmoor, Ill., for plaintiff.

Ray Ostler of Gombert, Sharfman, Gold & Ostler, P.C., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

JOHN D. SCHWARTZ, Chief Judge.

The Defendant, First Federal Savings & Loan Association of Elgin [1] ("First Federal"), has moved to dismiss counts one, four, five and six of the First Amended Complaint and Jury Demand ("Complaint") of the Plaintiff–Debtor Kress Road Partner-

---

**1.** First Federal Savings & Loan Associates of Elgin is now a division of University Financial

Savings F.A. (Complaint at ¶ 24).

ship ("Kress Road" or "Partnership").[2] Three grounds are set forth in support of First Federal's Motion: (i) The Complaint fails to set forth a claim upon which relief can be granted, (ii) The state court Judgment of Foreclosure and Sale is *res judicata* and (iii) Kress Road is collaterally estopped by the state court's Judgment of Foreclosure from relitigating the validity of First Federal's lien. For the reasons set forth in this Memorandum Opinion, First Federal's motion will be granted.

## FACTS AND BACKGROUND

The following facts are gleaned from the Complaint and its exhibits. In June of 1980, Louis Ross ("Ross") and Francis Callaghan ("Callaghan") were attempting to find individuals to invest with them in a limited partnership to develop property. On July 1, 1980, various individuals entered into a limited partnership agreement ("Partnership Agreement") with Callaghan and Ross Development Corporation ("CRDC"), a company owned by Callaghan and Ross.[3] (Complaint, Ex. A). Pursuant to the Partnership Agreement, CRDC was the general partner of Kress Road holding a ten percent interest in the profits and losses of the Partnership with the remaining ninety percent spread among the limited partners. The purpose of the Partnership was to "acquire" and "evaluate further construction" on ten acres of real estate improved with a partially completed building located in DuPage County, Illinois ("Property"). (Complaint, Ex. A at ¶ 3).

The Partnership Agreement provided with exceptions not pertinent here that: "the General Partner is hereby designated and given authority on behalf of the Partnership to sign, seal, deliver and accept ... notes, security deeds, mortgages ... and any and all other documents necessary incidental to the sale ... or evidencing of indebtedness of the Partnership." (Complaint, Ex. A at ¶ 19c). The Partnership

Agreement also provided: "General Partner may not sell, mortgage ..., or refinance any mortgage on the Partnership's real estate or other property, or any substantial portion thereof, without the prior written consent of Partners owning 51% of the capital interest in the Partnership." (Complaint, Ex. A at ¶ 14).

The Complaint alleges that in January of 1986, Callaghan and Ross, without the knowledge or consent of the limited partners, caused the Property to be conveyed to a land trust with the Defendant Chicago Title and Trust Company as trustee ("CT & T" or "Trustee"). The trust agreement entered on January 20, 1986 was signed by CRDC by Callaghan and Ross and bore the legend "Amended" (Complaint, Ex. C). The Amended Trust Agreement provided that title to the Property was placed in trust with CT & T as Trustee, Kress Road as beneficiary, with the power of direction in CRDC. All notices or inquiries concerning the Property were to be sent to Callaghan and Ross Financial Corporation. (Complaint, Ex. C).

Pertinent parts of the Amended Trust Agreement are as follows:

Chicago Title & Trust Company, a corporation of Illinois, as trustee hereunder, is about to take legal and equitable title to the following described real estate in DuPage County, Illinois: [Here follows a description of the property].

When trustee has taken title to the real estate or has accepted in writing title to any other property conveyed to it as trustee hereunder, the trustee will hold it for the uses and purposes and on the trust herein stated....

It shall not be the duty of the purchaser of the property or of any part of it to see to the application of the purchase money, *nor shall anyone who may deal with the trustee be required or privileged to inquire into the necessity or expediency*

---

**2.** First Federal is not a defendant in counts two, three, seven, eight and is the only named defendant in counts one, four, five and six. Count nine seeks to recover attorneys' fees from all of the defendants in this adversary proceeding.

**3.** At the time the Partnership was formed, an Illinois limited partnership was required to record a certificate of limited partnership with the recorder of deeds. The Complaint does not disclose or allege such a filing. (See Complaint, Ex. A at ¶ 11).

*of any act of the trustee, or into the provisions of this agreement."*

This agreement shall not be recorded in the county in which the property is situated, or elsewhere, but any recording shall not be notice of the rights of any person derogatory to the title or powers of the trustee....

It is agreed by the parties and by any person who may hereafter acquire any interest in this trust that the trustee will deal with the trust property including cash or other assets of any kind which may have become subject to trust only when authorized to do so in writing.

*On the written direction of the parties or party designated on reversed side hereof as having the power of direction, trustee will make deeds for, or mortgages or trust deeds* (which may include a waiver of the right of redemption from sale under an order or decree of foreclosure) or execute leases or otherwise deal with the title to the trust property including cash or other assets subject to the trust. The beneficiaries by written instrument delivered to the trustee may revoke the foregoing power of direction and designate the person thereafter to exercise the power. Such instrument shall be signed by all the then beneficiaries. *The trustee shall not be required to inquire into the propriety of any direction.* (Complaint, Ex. C) (Emphasis added).

Nowhere in the Amended Trust Agreement was there a provision similar to the one in the Partnership Agreement requiring CRDC to obtain approval of 51% of the limited partners before refinancing or mortgaging the Property.

According to the Complaint, Callaghan and Ross, without knowledge or consent of the limited partners, arranged for a $635,000 construction loan from First Federal. On March 14, 1986 a loan agreement was executed which provided that $635,000 would be loaned by First Federal to Callaghan & Ross evidenced by a mortgage note ("Mortgage Note") (Complaint, Ex. D) and secured by a mortgage on the Property ("Mortgage") (Complaint, Ex. F).

First Federal proceeded to loan $635,000 pursuant to the Mortgage Note and Mortgage duly executed by CT & T as Trustee. (Complaint, Exs. D and F). The Mortgage was dated March 14, 1986, and was recorded with the Recorder of Deeds for DuPage County, Illinois on April 10, 1986 as Document 86–3705. (Complaint, Ex. F). The Mortgage Note dated March 14, 1986 was due and payable on October 1, 1987. (Complaint, Ex. D). The purpose of the loan was to develop the Property. It is not clear from the Complaint if all funds were used for the Property. The court accepts for purposes of this motion that not all loan proceeds were used to improve the Property.

Though the Complaint also alleges that First Federal failed to secure a title policy, First Federal has supplied a copy of such a policy of even date with the recording date of the Mortgage and therefore the court will not consider this allegation as a well pleaded fact. (See Bankruptcy Rule 9011).

On June 13, 1988 sometime after the maturity date of the Mortgage Note, attorneys for First Federal notified Callaghan and Ross Financial Corporation that the loan was in default. (Complaint, Ex. H). On November 18, 1988, First Federal commenced suit in the Circuit Court of DuPage County to foreclose the Mortgage securing its Mortgage Note. A default Judgment of Foreclosure was entered on November 22, 1989, (Complaint, Ex. I). In the Judgment of Foreclosure, the Circuit Court found that First Federal held a valid mortgage lien on the Property.[4] (Complaint, Ex. I).

On March 28, 1990, Kress Road commenced a case under Chapter 11 of the Bankruptcy Code. On April 3, 1990, Kress Road filed a complaint as an adversary proceeding within the bankruptcy case seeking relief against First Federal and others. Thereafter, First Federal sought permission of the court to sell the Property to the DuPage County Airport Authority for $960,000. (Complaint at ¶ 40). The court authorized the sale on July 15, 1990

---

4. Without such a finding, no Judgment of Foreclosure could have been entered.

and ordered delivery of $898,154.79 of the sale proceeds to First Federal. (Complaint at ¶ 41). The court retained jurisdiction over the funds until a ruling on the validity of First Federal's lien.

On January 23, 1991 Kress Road filed its First Amended Complaint and Jury Demand seeking among other relief to have the Mortgage securing First Federal's Mortgage Note declared invalid. First Federal subsequently filed a motion to dismiss the counts pertaining to it.

## DISCUSSION

The court will first consider First Federal's allegation that the Complaint fails to state a cause of action. Such a motion is taken under Rule 7012(b) of the Federal Rules of Bankruptcy Procedure (hereinafter "Bankruptcy Rules") which incorporates Rule 12(b) of the Federal Rules of Civil Procedure.

A claim should not be dismissed for failure to state a cause of action unless the court is convinced that the Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Miller v. School Dist.,* 495 F.2d 658, 661, *reh. den.,* 500 F.2d 711 (7th Cir.1974); *Yaworski v. Pate,* 717 F.Supp. 624, 625 (N.D.Ill.1989); *Davis v. Frapolly,* 717 F.Supp. 614, 615 (N.D.Ill. 1989). The purpose of a motion to dismiss is to determine the sufficiency of the complaint, and not the merits of the case. *Barkman v. Wabash, Inc.,* 674 F.Supp. 623, 629 (N.D.Ill.1987). In determining the sufficiency of the complaint, the court must accept the facts alleged in the complaint as true, together with all reasonable inferences and determine whether the Plaintiff has any basis for its claim. *Yeksigian v. Nappi,* 900 F.2d 101, 102 (7th Cir.1990); *Bane v. Ferguson,* 890 F.2d 11, 13 (7th Cir.1989).

The relief requested under count one is a determination that the Mortgage securing First Federal's Mortgage Note is invalid; count four requests that First Federal turn over all rental income received since December 1988; count five makes a claim of usury founded on the fact that First Federal charged Kress interest on money which Kress alleges was not due; finally, count six requests that all of First Federal's claims against the Partnership be subordinated to the claims of all other creditors.[5] Counts four, five and six exist only if a cause of action exists on count one. Because the sufficiency of count one is the cornerstone of this complaint as respects the defendant, First Federal, the court will concentrate on count one.

Count one specifically alleges that neither CRDC as general partner nor Kress Road executed any of the loan documents; that the Trustee was the mere title holder for the Property and did not have power or authority to incur obligations for or on behalf of the Partnership[6]; that First Federal knew or should have known about restrictions and limitations on the general partner's authority set forth in the Partnership Agreement; and that First Federal had a duty to inquire into the authority of CT & T to execute the Mortgage.

Simply stated, Kress Road maintains that because the Partnership Agreement required written approval of 51% of the limited partners before a mortgage could be placed on the Property and since this approval was not received, CT & T was not properly authorized to execute the Mortgage and the lien of First Federal is invalid. The court is aware of no support for this remarkable concept. Kress Road misconstrues the law of the state of Illinois concerning land trusts.

### 1. Illinois Land Trusts

■ The property rights in the assets of a debtor's estate are determined by the

---

5. The court is at a loss as to how this helps Kress Road limited partners as their claims are not as creditors, but as owners similar to owners of equity in a corporation and their claims follow after payment to all creditors.

6. This allegation is correct. The Trustee had no power or authority to bind the Partnership under the Amended Trust Agreement and the Trustee never did bind the Partnership. The Mortgage Note was a non-recourse loan as far as the Partnership was concerned as it had no personal obligation to pay the Mortgage Note.

laws of the state in which the property is located. *See, Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). Therefore, it is Illinois law to which the court must turn in determining the rights and obligations of the parties to this litigation.

Land trusts have long been validated in Illinois. That their existence is not always understood is not surprising as the Statute of Uses is a part of Illinois common law. The Statute of Uses was initially adopted in 1536 under the reign of Henry VIII of England. "It sought to avoid the frustration of governmental authority and decreed that a use was to be executed and the title of the property vested in the beneficial owner. The English Courts, however, some nine years later, mitigated the effect of this legislation by holding that the Statute of Uses was not applicable to an active use or trust and, where the trustee had active duties to perform, the trust arrangement was valid and not to be executed by the Statute of Uses." HENRY W. KENOE, KENOE ON LAND TRUSTS 1.1 (Ill. Inst. for CLE 1989). Illinois courts have construed land trusts as active trusts and not affected by Statute of Uses. *See, Chicago Federal Savings and Loan Association v. Cacciatore*, 25 Ill.2d 535, 185 N.E.2d 670 (1962); *Old Orchard Bank And Trust Co. v. Rodriguez*, 654 F.Supp. 108, 110 (N.D.Ill.1987). As stated in *Old Orchard*, it was "the trustee's duty to reconvey title after 20 years [that] took the trust out of the so-called 'dry trust' category deemed executed by the Statute of Uses." 654 F.Supp. at 110, n. 3.

■ In a typical land trust, the trustee holds title to the property and the beneficiary is given full management powers. *See, Southeast Village Associates v. Health Management Associates*, 92 Ill. App.3d 810, 48 Ill.Dec. 294, 416 N.E.2d 325 (1st Dist.1981); KENOE ON LAND TRUSTS at 1.3. The trustee deals with the property only at the written direction of the beneficiary or the party with the power of direction. An excellent description of land trusts is found in *Robinson v. Chicago National Bank*, 32 Ill.App.2d 55, 176 N.E.2d 659, 661 (1961):

> The land trust is a device by which the real estate is conveyed to a trustee under an arrangement reserving to the beneficiaries the full management and control of the property. The trustee executes deeds, mortgages or otherwise deals with the property at the written direction of the beneficiaries. The beneficiaries collect rents, improve and operate the property and exercise all rights of ownership other than holding or dealing with the legal title. The arrangement is created by two instruments. The deed in trust conveys the realty to the trustee. Contemporaneously with the deed in trust a trust agreement is executed. The pertinent provisions of the trust agreement are summarized as follows: While legal title to the real estate is held by the trustee, the beneficiaries retain 'the power of direction' to deal with the title, to manage and control the property, to receive proceeds from sales or mortgages and all rentals and avails on the property. The trustee agrees to deal with the res of the trust only upon the written direction of the beneficiaries or the persons named as having power of direction ... The trustee is not required to 'inquire into the propriety of any direction' received from the authorized persons. The trustee has no duties in respect to managment or control of the property or to pay taxes, insurance or to be responsible for litigation. The only specified duties upon the trustee are to 'execute deeds or otherwise deal with the property upon the direction of the beneficiary or other named authorized persons.' Another duty of the trustee is to sell at public auction any property remaining in the trust twenty years from the date of the agreement.... The agreement forbids its recordation in the Recorder's Office or elsewhere and forbids the trustee to disclose the name of any beneficiary.

■ As explained in the quote above, a land trust is created by two documents, the deed in trust and the trust agreement. The first document, the deed in trust, conveys title of the property to the land trust-

ee. *Parkway Bank and Trust Co. v. Gleich*, 213 Ill.App.3d 444, 157 Ill.Dec. 591, 594–95, 572 N.E.2d 1055, 1058–59 (1st Dist. 1991). The deed in trust does not normally disclose the identity of the beneficiary or the terms of the trust agreement. *Id.* Because the deed in trust is the only recorded document, third parties can deal with the trustee without being required to examine the trust agreement. KENOE ON LAND TRUSTS at 2.2. The second document, the trust agreement, sets forth the contractual rights and duties of the trustee and the beneficiary. It specifically provides that the trust agreement is not to be recorded and that no third party dealing with the Trustee is required or privileged to inquire into the necessity or expediency of any act of the trustee.

■ There are four distinctive characteristics of every land trust. 1) The trustee is vested with legal and equitable title to the property and the beneficiary has no interest in either, 2) The trustee's only duties are to convey, mortgage or deal with the property on the written direction of the beneficiary and to sell the property at the termination of the trust, 3) The beneficiary has the right to possess, manage, and control the property, as well as the rights to rents, profits and proceeds of a sale or financing of the property, and 4) The beneficiary's interest in the property is personal property. KENOE ON LAW TRUSTS at 1.3.

■ In determining the relationship between the parties, it is important to keep the powers of the trustee and the beneficiary distinct. In operating the property, the beneficiary is not the agent of the trustee and cannot create a liability against the trustee. *See, Feinberg v. Great Atlantic & Pacific Tea Co.*, 131 Ill.App.2d 1087, 266 N.E.2d 401, 404 (1st Dist.1971) citing HENRY W. KENOE, LAND TRUSTS 43–44 (Chicago Bar Assoc. 1967) ("One of the most common errors is for a beneficiary to execute a lease in the name of the land trustee by himself as agent. Such a lease is meaningless and not binding upon the trustee since the beneficiary is not an agent or the trustee"). Just as a beneficiary is not an agent of the trustee, the trustee is not an agent of the beneficiary. When the trustee of a land trust performs his duties as described in the trust agreement, he is acting as principal and not as agent of the beneficiary.[7] *See Barkhausen v. Continental Illinois Nat. Bank & Trust Co.*, 3 Ill.2d 254, 120 N.E.2d 649 (1954), *cert den.*, 348 U.S. 897, 75 S.Ct. 218, 99 L.Ed. 705 (1954).

A definitive scholar on land trusts, Henry Kenoe, explains the rights of the parties when a lien is placed on trust property. "A security transaction involving the legal and equitable title of the property held in the land trust must obviously designate the land trustee as the mortgagor and be signed by it ... In every instance in which a mortgage or trust deed was executed for the purpose of securing an obligation of the trust estate, these instruments have been executed by the land trustee and indeed they should be." KENOE ON LAND TRUSTS at 5.25. Kenoe further explains, "[t]he authority of the land trustee to execute instruments creating a mortgage lien upon the trust property is fully expressed in the deed in trust as, for example, 'The full power and authority is hereby granted to said trustee ... to mortgage, pledge or otherwise encumber said property, or any part thereof.' Mortgagees dealing with the trustee are fully protected under the full power deed in trust commonly used to create land trust." *Id.*

### 2. Validity of First Federal's Lien

■ The undisputed facts show that the Mortgage Note and Mortgage were duly executed by the CT & T, "not personally, but as trustee under the provisions of a deed or deeds in trust duly recorded and delivered to said trustee pursuant to a trust agreement dated January 20, 1986 and known as trust number 1087414."

---

**7.** Although a few courts have held that a beneficiary may be liable on a trustee's contract where the beneficiary retained control over the trustee and the management of the property, these cases deal with the beneficiary's liability to third parties and not the requirement that the beneficiary must be a party to such a contract to bind the property.

(Complaint, Exs. D & F).[8] There is no allegation of fraud, on First Federal's part or any other action that would lead this court to conclude that First Federal is anything other than a bona fide lender of $635,000 pursuant to a note and mortgage duly made and executed by the holder of the legal and equitable title to the property in question.[9]

■ Further, there is no requirement under Illinois law that First Federal examine a document it never knew existed. The Partnership Agreement is nowhere to be found in the chain of title; nor is there any claim that First Federal had a copy; nor does Kress Road allege that what occurred was ultra vires; nor is there any allegation of fraud on First Federal's part nor a conspiracy with others to defraud the Partnership of the Property.

The Kress Road limited partners chose to invest in Kress Road and place their trust in Callaghan and Ross. The limited partners in this case may have made a bad decision. By choosing the limited partnership form of investment coupled with a land trust, the limited partners clothed CRDC, the general partner, with the authority to act on behalf of Kress Road. Yet the limited partners took no action to ensure that persons dealing with the Property would have knowledge of the restrictions on their general partner. They have pleaded no facts indicating that they exercised control over their general partner to limit its activity in the manner provided for in the Partnership Agreement.

Judge Easterbrook in *Belisle v. Plunkett*, 877 F.2d 512 (7th Cir.1989), had occasion to comment on facts not too dissimilar from the ones present in this case. In *Belisle*, Plunkett, the debtor, signed a contract to buy a leasehold for 1.2 million. Plunkett formed five partnerships to raise money for the acquisition of the leasehold. After receiving the funds, Plunkett closed on the leasehold in his own name despite using partnership funds. Shortly thereafter, Plunkett filed for bankruptcy. The trustee asserted that the leasehold was an asset of the debtor's estate and the partners sought to quiet title to the partnership property.

The court in *Belisle* held that the leasehold interest was held in constructive trust but could nevertheless be brought into the debtor's bankruptcy estate pursuant to the trustee's § 544(a)(3) strong arm powers. Judge Easterbrook stated, "Plunkett bamboozled the partners and used for his own benefit the leasehold acquired with partnership funds. *Id.* at 513. "A bona fide purchaser from Plunkett would have taken ahead of the partners under local law. They neglected to record the partnerships' interest, though recording is easy. (The partners could, and in retrospect should, have refused to invest funds except through an escrow agent who would have held the cash until good title had been recorded in the partnerships' names.) One of Plunkett's creditors extending a $100,000 against a collateral of assignment of the lease hold, actually obtained a position superior to that of the partners." *Id.* at 515.

What Judge Easterbrook is in effect saying is that if you give someone the power to act on your behalf you have to accept the results of that person's actions. You can not in circumstances such as those set forth in the Complaint, place upon a third party (First Federal) the obligation to make

---

8. Though the Mortgage Note names Callaghan & Ross Financial Corporation and Callaghan and Ross individually together with the Trustee as "Makers", the Mortgage Note itself shows that only the Trustee signed the Mortgage Note. Under Illinois law, only the party signing a note is considered the "maker." *See, e.g., Midwest Bank & Trust Co. v. Roderick,* 132 Ill.App.3d 463, 87 Ill.Dec. 334, 476 N.E.2d 1326 (1st Dist. 1985); *Alton Banking & Trust Co. v. Sweeney,* 135 Ill.App.3d 96, 89 Ill.Dec. 926, 481 N.E.2d 769 (5th Dist.1985); *Blackhawk Production Credit*

*Assn. v. Bay,* 69 Ill.App.3d 239, 25 Ill.Dec. 726, 387 N.E.2d 382 (2d Dist.1979).

9. The Mortgage Note is further secured by a Guarantee and Security Agreement executed by CRDC. (Complaint, Ex. E). It is not an uncommon practice for a lender to secure a separate guarantee of a general partner. Though one would hope that such documents would have been more carefully attended to, there is nothing within any of the questioned documents that would invalidate either the Mortgage Note or the Mortgage.

an independent investigation of one acting with actual authority when none is called for under existing law.

Count one does not state a cause of action upon which relief may be granted. Accepting all of the allegations as true, First Federal violated no rule of law by making the loan in question and receiving the Mortgage from the Trustee, who under the Trust Agreement was vested with full legal and equitable title to the Property. Because count one fails to state a claim upon which relief can be granted, counts four, five and six must fall.[10]

3. The Effect of the State Court Judgment of Foreclosure

First Federal also states that Kress Road is prevented by res judicata or collateral estoppel from relitigating the validity of First Federal's Mortgage. The defense of res judicata or collateral estoppel as raised by First Federal is real as this judgment may well be entitled to full faith and credit. The Circuit Court of DuPage County could not grant a judgment of foreclosure without determining that a valid and enforceable mortgage existed. The caption of the Judgment of Foreclosure names Kress Road as a defendant and the Judgment itself, "finds that each of the Defendants in this cause have been duly and properly brought before the court ..." (Complaint, Ex. I). Further, a judgment of foreclosure is final as to the matters it adjudicates. *See, Santana v. Zipperstein,* 142 Ill. App.3d 386, 96 Ill.Dec. 771, 772, 491 N.E.2d 1231, 1232 (1st Dist.1986); *Marion Metal & Roofing Co. v. Mark Twain Marine Industries, Inc.,* 114 Ill.App.3d 33, 69 Ill.Dec. 759, 761, 448 N.E.2d 219, 221 (5th Dist. 1983). However, this matter is complicated by the filing of the bankruptcy proceeding and in view of this court's decision on the "merits", it need not be considered.

## CONCLUSION

Counts one, four, five and six of Kress Road's First Amended Complaint and Jury

Demand are therefore dismissed for failure to state any claim upon which relief may be granted.

---

**10.** Because all counts against First Federal are dismissed, the request for attorneys' fees from First Federal in count nine becomes moot.